(3) the petition for writ of habeas corpus is dismissed with prejudice.

Petition for NATURALIZATION OF Jaime Vitero CLARINO, Ismael Bautista Melendrez, Alfredo Monserate Pinero, Virginia Evangelista Reyes, Ruperto Iligan Ureta, Flordeliza Malimban Lopez, Ricardo Salvador Garcia, Vincente Sison Ocampo, Andres Laxamana Castillo, Adriano Sarmiento Duco, Ambrocio Cabusao Hicban, Francisco Arce Ignacio, Urosia Eshavia Oquias, Lina Shinyo Rizal, Diosdado Domingo Salvador, Justo Herrera San Jose, Virginia Bayabo Tiburcio, Macedonia Macaspac, Buenventura A. Nadres.

Petition Nos. 528661 JMI, 505589 JMI, 528071 JMI, 577395 JMI, 519708 JMI, 550633 JMI, 522931 JMI, 529503 JMI, 536864 JMI, 489761 JMI, 512546 JMI, 512506 JMI, 529035 JMI, 426514 JMI, 522280 JMI, 514771 JMI, 528672 JMI, 485774 JMI and 26979259 JMI.

United States District Court,
C.D. California.

April 28, 1988.

194

Margaret Jambor, Los Angeles, Cal., for U.S. Dept. of Justice.

Leo S. Shephard and Russell L. Marshak, Popkin, Shamir & Golan, Los Angeles, Cal., for petitioners.

## OPINION AND ORDER GRANTING PETITIONS FOR NATURALIZATION

IDEMAN, District Judge.

The petitioners are nineteen (19) Phillipine nationals who have petitioned for nat-

**1.** Sections 701, 702 and 705 of the Nationality Act of 1940, added by the Second War Powers Act, 1942, 56 Stat. 182, as amended, 8 U.S.C. §§ 1001, 1002, 1005 (1940 ed. Supp. V) provided in pertinent part:

§ 701. "[A]ny person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and [w]ho shall have been at the time of his enlistment or induction a resident thereof and who (a) was lawfully admitted into the United States, including its Territories and possessions, or (b) having entered the United States, including its Territories and possessions, prior to September 1, 1943, being unable to establish lawful admission into the United States serves honorably in such forces beyond the continental limits of the United States or has so served may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention, no certificate of arrival for those described in group (b) hereof, and no period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petitioner in his own handwriting, or meet any educational test; ... Provided, however, That ... (3) the petition shall be filed not later than December 31, 1946....

uralization pursuant to Sections 701–705 of the Nationality Act of 1940, ch. 199, 56 Stat. 182, *et seq.*, as amended, 8 U.S.C. Sections 1001–1005 (hereinafter the "Act").[1] The Immigration and Naturalization Service, (hereinafter the "INS"), denied their petitions for naturalization. The petitioners brought a Motion to Calendar the Petitions for Naturalization for A Final Hearing. The court granted the petitioners' Motion to Calendar the Matter for a Final Hearing. The hearing was scheduled for April 27, 1987. On April 27, 1987, the court heard oral argument by the parties. The court directed the parties to submit briefs addressing the legal issues raised. The hearing was continued to June 8, 1987. The briefs were received and oral argument was heard thereafter. The petitioners have submitted their existing service records, their affidavits, and transcripts of their preliminary examination by the INS. In addition, petitioners and some of their witnesses were examined *de novo* under oath before the court. The court has jurisdiction pursuant to 8 U.S.C. Section 1421(a).

§ 702. "During the present war, any person entitled to naturalization under section 701 of this Act, who while serving honorably in the military ... forces of the United States is not within the jurisdiction of any court authorized to naturalize aliens, may be naturalized in accordance with all the applicable provisions of section 701 without appearing before a naturalization court. The petition for naturalization of any petitioner under this section shall be made and sworn to before and filed with, a representative of the Immigration and Naturalization Service designated by the Commissioner or a Deputy Commissioner, which designated representative is hereby authorized to receive such petition in behalf of the Service, to conduct hearings thereon, to take testimony concerning any matter touching or in any way affecting the admissibility of any such petitioner for naturalization, to call witnesses, to administer oaths, including the oath of the petitioner and his witnesses to the petition for naturalization and the oath of renunciation and allegiance prescribed by section 335 of this Act and to grant naturalization, and to issue certificates of citizenship...."

§ 705. "The Commissioner, with the approval of the Attorney General, shall prescribe and furnish such forms, and shall make such rules and regulations, as may be necessary to carry into effect the provisions of this Act."

## I. PETITIONERS' CLAIMS

Petitioners, who have lived in the United States for varying lengths of time, claim to have served honorably in the United States armed forces during World War II in that they served in the Philippine Scouts or the Commonwealth Army of the Philippines. All petitioners claim the right to citizenship under Section 701 of the Act contending that they served honorably during the war. Moreover, some of the petitioners can only apply under Section 701, as they were discharged before a commissioner arrived in the Phillipines, and hence could never have qualified under Section 702. They contend that the government should be estopped from relying upon the expiration date of the Act, specifically Section 701, because of governmental misconduct and bad faith similar to that which has led other courts to estop the government from relying upon the statutory expiration date of Section 702. Furthermore, some of the petitioners assert that the court should invoke its equitable powers to modify the proof of service requirement of Section 701. Under Section 701, the petitioners' affiants must be United States citizens of noncommissioned rank or higher. Finally, the petitioners claim citizenship under Section 702. They contend that they were still on active duty when the commissioner arrived in the Philippines and that, but for governmental misconduct and bad faith, they could have achieved citizenship by this route.

The INS contends, however, that the petitioners are ineligible for naturalization under Section 701 due to their insufficient proof of service in a recognized Army unit or their insufficient proof of filing an application for naturalization before the expiration of the Act. Furthermore, the INS contends that, under Section 702, many petitioners are ineligible for naturalization because they were discharged before examiner Ennis was withdrawn from the Philippines.

2. *Id.*

## II. THE ACT

Shortly after the entrance of the United States into World War II, Sections 701–705 were added to the Nationality Act of 1940, by the Second War Powers Act of 1942, ch. 199, 56 Stat. 176, *et seq.*, as amended.[2] The Act expired by its own terms on December 31, 1946. The purpose of the Act was to provide special consideration for aliens who served honorably in the United States armed forces during the war and wished to become American citizens. The Act provided two routes to citizenship.

Section 701 authorized citizenship for present and former members of the armed forces, but required the applicant to eventually present himself before a United States court of competent jurisdiction. The requirement of Section 701 that the applicant appear before a court possibly reflected the view that time was of less urgency with respect to a discharged service member who was probably out of harm's way and not readily available to the commissioners created by Section 702.

Section 702 provided an even faster track for members who were currently on active duty. Commissioners were created and were given world-wide jurisdiction to go to the troops and grant citizenship on the spot to qualified applicants.

The obvious purpose of the Act was to encourage aliens to serve in the United States armed forces and to reward those who served honorably and who aspired to become United States citizens. Sections 701–702 of the Act required that persons who sought to be naturalized had to have served prior to December 28, 1945. Furthermore, their petitions for naturalization had to be filed by December 31, 1945.[3]

## III. IMPLEMENTATION OF THE ACT

For a comprehensive summary of the historical background of this case and the implementation of the Act, the court quotes from *In the Matter of the Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931, 935–36 (N.D.Cal.1975).

3. Act of Dec. 28, 1945, Pub.L. No. 79–270, 59 Stat. 658 (amending §§ 701, 706 of the Nationality Act of 1940).

Pursuant to the Act, officers of the INS were sent to overseas military posts to effect the naturalization of eligible members of the United States armed forces. Between 1943 and 1946, these officers traveled from post to post through England, Iceland, North Africa, and the islands of the Pacific, naturalizing thousands of foreign nationals. In the Philippines, of course, naturalization of alien servicemen was impossible during the Japanese occupation. However, with the liberation of the Philippines, implementation of the Act commenced, following resolution of two preliminary problems of statutory interpretation concerning the eligibility of Filipino servicemen under Sections 701–702. (Footnote omitted). In early August of 1945 the INS designated Mr. George H. Ennis, Vice Consul of the United States at Manila, to naturalize aliens pursuant to Section 702.

Pursuant to Section 10(a) of the Philippine Independence Act of 1934, ch. 84, 48 Stat. 463, the Philippines were to become a fully independent, self-governing country on July 4, 1946. Apparently fearful that large numbers of Filipinos would be naturalized and emigrate to the United States on the eve of independence, an unidentified official of the Philippine Government conveyed to the United States Department of State the Philippine Government's concern that Filipinos who had always been domiciled in the Philippines were being naturalized by Vice Consul Ennis. (Footnote omitted). Based on this concern, on September 13, 1945, the Commissioner of the INS wrote to the Attorney General requesting that the authority previously granted to Vice Consul Ennis to naturalize aliens be revoked, and that no new naturalization officer be named. (Footnote omitted). The Attorney General approved this request on September 26, 1945, and the authority of Vice Consul Ennis was immediately revoked. However, notice of that revocation did not reach Ennis until late October, 1945, for he continued to naturalize aliens until October 26, 1945. It was not until August, 1946, that another naturalization agent, Mr. P.J. Phillips, was appointed to the Philippines. Approximately 4000 Filipinos were naturalized by Mr. Phillips under Section 702 between August and December 31, 1946, when the Act expired. Thus, contrary to the express intentions of Congress, Filipinos eligible for naturalization under Section 702 were denied the opportunity to take advantage of the Act for a period of approximately nine months. (Footnote omitted).

As noted above, the Philippines were in a different situation than most areas of the world where United States armed forces were fighting during World War II. Over most of the world, commissioners empowered to grant citizenship under Section 702 were with the troops, or available to the troops, since the early days of the war. Discharge during wartime was rare. Proof of service would seldom be a problem since most units were those of the active United States armed forces and recognized as such by the United States government. Should proof by affidavit be required, this could easily be accomplished since almost all non-commissioned officers and all commissioned officers were United States citizens and were readily available. The result was that United States citizenship was readily available to aliens who served honorably with the United States forces in most of the world.

The situation, however, was dramatically different in the Philippines. The Philippines fell to the Japanese early in the war, before the enactment of the Act. The occupation continued until almost the end of the war. During the occupation, the presence of the United States government in the Philippines was non-existent. The only activities being conducted by Americans were guerilla warfare and prisoner of war camp activity. The liberation of the Philippines came near the end of World War II. As was to be expected, demobilization of the United States forces in the Philippines was occurring even as the United States government was reestablishing its presence in the country. There was, for that reason, a constant discharge of personnel

who lost their chance for citizenship under Section 702 as they reverted to civilian status. Section 701 was their only chance, but they needed to file applications before the statute expired on December 31, 1946 or the chance for citizenship would be forever lost, at least under the Act.

## IV. ESTOPPEL UNDER SECTIONS 702 AND 701

In *In the Matter of Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931 (N.D.Cal.1975), 68 Filipinos sought naturalization on the grounds that they had served in the Commonwealth Army of the Philippines or the Philippine Scouts. The court concluded, *inter alia*, that the bad faith of the government regarding its withdrawal of the commissioner and its continuing failure to implement the Act in the Philippines, estopped it from asserting the expiration date of Section 702 of the Act, thereby permitting the use of Section 702 for applications filed after December 31, 1946. *Id.* at 939. This court concurs in that opinion.

Similarly in the instant action, the petitioners contend that despite the 1946 expiration of Section 701 they are entitled to naturalization because, pursuant to Section 705, there was a duty to provide information and applications, to process applications, to conduct whatever investigation was necessary and to make a recommendation to the naturalization court.[4] This court concurs with the contentions of the petitioners.

■ In the instant petitions, the court finds that the government misconduct with respect to Section 701 was identical in most respects to that which has led the courts to estop the government from relying upon the expiration date of Section 702. The government was under a duty to provide necessary forms and information, which it declined to do as the result of a political decision by the executive branch to nullify the Act insofar as Philippine veterans were

concerned. With respect to Section 701, the forms and information were essential to permit qualified individuals to apply before the cut-off date. This failure by the government constituted deliberate misconduct and a circumvention of the Act, which was the law of the land. No rational purpose would be served by treating Section 701 any differently than Section 702 with respect to honoring the expiration date. This court concludes that the government should be, and hereby is, estopped from asserting the expiration date of Section 701 as a defense to petitions filed thereunder.

Consequently, the court concludes that the United States government owed Filipino war veterans a duty under Section 701, separate and apart from that owed them under Section 702, to provide necessary information and appropriate forms in the Philippines and to provide such assistance as was necessary to permit the naturalization of Filipino veterans in the Philippines. The effect of this holding is that all Filipino veterans who can prove the requisite honorable military wartime service will be eligible to apply under Section 701 without regard to when they filed for naturalization.

## V. SECTION 701 AFFIANT REQUIREMENTS

Section 701 of the Act provides two methods for petitioners to satisfy the requirements of honorable military wartime service:

1) certification by a United States military authority; or

2) affidavits.

Section 701 of the Nationality Act of 1940, ch. 199, 56 Stat. 182, as amended.

This portion of the opinion will be concerned with ten (10) petitioners' proof of service by affidavits.[5] These petitioners have not been able to obtain certification by the United States military, specifically

---

4. § 705 *supra* note 1.

5. The government disputes the service of the following ten (10) petitioners: 1) Andres Laxamana Castillo; 2) Adriano Sarmiento Duco; 3) Ambrocio Cabusao Hicban; 4) Francisco Arce Ignacio; 5) Urosia Eschavia Oquias; 6) Lina Shinyo Rizal; 7) Diosdado Domingo Salvador; 8) Justo Herrera San Jose; 9) Virginia Bayabo Tiburcio; and 10) Macedonia Macaspac.

the United States Army Reserve Components, Personnel and Administrative Center (USARCPAC), by reason that either necessary records cannot be found or that the guerilla units with which they served were not recognized by the military authorities. The government does not dispute the service of the remaining nine (9) petitioners.[6]

■ Proof of service by affidavit requires that the affiants are:

1) United States citizens; and

2) a noncommissioned officer or higher. The court must determine whether it should strictly apply the proof of service requirements of Section 701. Generally, in reviewing naturalization petitions, federal courts sit as courts of equity. *Fedorenko v. United States*, 449 U.S. 490, 516, 518, 101 S.Ct. 737, 752–53, 66 L.Ed.2d 686 (1981). When reviewing agency action, a federal court has broad remedial powers and may "adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action." *Legal Aid Society of Alameda County v. Brennan*, 608 F.2d 1319, 1342 (9th Cir. 1979) (quoting *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939)).

In *Petition of Agustin*, 62 F.Supp. 832 (N.D.Cal.1945), petitioner, a native of the Philippines, applied for naturalization under Section 701 of the Act. The court found that the petitioner was eligible for citizenship, even though he had not formally enlisted and had not been inducted, because there was sufficient documentation to support his claim of service. *Id.* at 836. The court held that, from an examination of the Congressional proceeding at the time Section 701 was adopted, Congress did not intend to establish any formalistic technicalities as a condition precedent to the bestowal of citizenship upon aliens serving in our armed forces. *Id.* at 835.

Additionally, the court held that "[i]t was clearly the intent of Congress in adopting § 701 to follow the historic course of granting the boon of citizenship to loyal aliens engaging to help defend this country." *Id.* The court quoted the House Committee reporting H.R. 1710 (which became Section 701) as stating: "[i]t is a matter of historic record that the Government of the United States, as an encouragement to loyal aliens engaged in the defense of this country through service in the armed forces, has in past years, relieved them from some of the burdensome requirements of the general naturalization laws." *Id.* In the same report, it is also stated that "[t]his proposed legislation proceeds upon the principle that non-citizens who are ready and willing to sacrifice their lives in the maintenance of this democratic government are deserving of the high gift of United States citizenship when vouched for by responsible witnesses as loyal and of good character and shown by government records as serving honorably." *Id. See also Pangilinan v. I.N.S.*, 796 F.2d 1091 (9th Cir.1986), *appeal pending*, —— U.S. ——, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987); *In the Matter of Petitions for Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931 (N.D.Cal.1975).

A. *Problems with requiring the affiants to be of United States citizenry prior to the expiration of Section 701.*

■ The government contends that some of the ten (10) petitioners in question do not qualify for naturalization because their affiants were not United States citizens prior to the expiration of Section 701. The statute is silent as to when the affiant must have achieved United States citizenship. However, it would seem that the only possible relevance to the requirement of United States citizenship for affiants is that there is some relationship between United States citizenship and truthfulness. That would indicate that citizenship at the time of the making of the affidavit is all that is required. Thus, the issue is whether the court, under its equitable powers, should estop the government from asserting the

6. The government does not dispute the service of the following nine (9) petitioners: 1) Jaime Vitero Clarino; 2) Ismael Bautista Melendrez; 3) Alfredo Monserate Pinero; 4) Virginia Evangelista Reyes; 5) Ruperto Iligan Ureta; 6) Flordeliza Malimban Lopez; 7) Ricardo Salvador Garcia; and 8) Vincente Sison Ocampo; and 9) Buenventura A. Nadres.

requirement that the affiants be of United States citizenship.

*First,* the petitioners are in a unique situation. Most of the United States armed forces were, naturally enough, composed almost entirely of the United States personnel. In the case of the Philippines, the contrary is the case. Relatively few United States citizens were fighting with the Philippine forces during the war, so as to be in a position to submit an affidavit regarding the petitioners' service based on personal knowledge.

*Second,* in a Catch–22 twist, the very misconduct by which the government prevented many Philippine veterans from achieving United States citizenship will now bar even more of these veterans from citizenship. But for the early misconduct, there would be more naturalized United States citizens to be available to sign affidavits for other veterans.

*Third,* it is now forty three (43) years since the end of the war. The veterans are now mostly in their sixties and older and many have died. The government misconduct that has delayed these proceedings for so many years has reduced the number of United States citizens available to make affidavits.

*Fourth,* this court perceives little rational connection between truthfulness and United States citizenship. A United States citizen is no more inclined to make a truthful affidavit than is a Philippine citizen. The true test should be whether the affidavit produces confidence that the affiant is telling the truth.

*Fifth,* the court has broad remedial powers and may adjust its relief to the exigencies of the case in accordance with its equitable power. Furthermore, Congress intended, in adopting Section 701, to commend those who risked their lives to protect our country. Accordingly, the court concludes that the provision in question will be satisfied by affidavits that appear to be truthful regardless of the citizenship of the affiant.

**B.** *Problems with requiring the affiants to be of noncommission rank or higher.*

Similar considerations are involved in the requirement that affiants be of noncommissioned rank or higher. Some of the affiants could not produce affidavits of persons of the required rank, but did produce affidavits of lower ranking persons.

*First,* the passing of the years have had the effect of reducing the number of potential NCOs and officers. Those individuals tend to be older than private soldiers and are dying at higher rates than those of lower rank.

*Second,* the court again perceives little rational connection between truthfulness and rank. Is a corporal to be believed and a private first class disbelieved, solely because of the difference in rank? Again, the proper standard is the truthfulness of the affidavit, not an artificial distinction between affiants based solely on grade.

*Third,* the same considerations of the court's equitable powers and Congressional intent apply here as to the requirement of United States citizenship for affiants. Accordingly, the court concludes that the requirement that the affiants be of the grade of NCO or higher should not be enforced.

## VI. CONCLUSION

In conclusion, the misconduct exemplified by the government estops it from insisting on a strict application of the expiration date of Section 701. The government does not dispute the service of petitioners Clarino, Melendrez, Pinero, Reyes, Ureta, Lopez, Garcia, Ocampo and Nadres. Therefore, they are entitled to naturalization under Section 701. Further, the court finds it necessary to mitigate the statutory requirements in order to assist the remaining petitioners in complying with Section 701. Proof of service by affidavit may be made by other than United States citizens and by those of lower ranking personnel as long as the court finds that there exists indices of reliability and that the government has the chance to cross-examine applicants. Based on these requirements, the court concludes that the remaining petition-

ers are also entitled to naturalization under Section 701. (See Appendix for discussion of individual petitions.)

In reaching this decision, the court recognizes the unjust consequences that these petitioners, who fought to save our country, will face absent mitigation of the statutory requirements. As Judge Renfrew wrote in *68 Filipino War Veterans:*

> [T]he Court cannot ignore, nor will the American public forget, the heroic sacrifices made by these and other Filipinos during World War II. Their courage and valor at Corregidor, during the Bataan death march, and throughout the Japanese occupation of the Philippine Islands stand as the finest examples of the dedication of free men opposing and resisting tyranny imposed upon them by an outside belligerent force. Petitioners' love of freedom and dedicated defense of this country during time of war truly show that '[l]oyalty is a matter of the heart and mind, not of race, creed, or color.'

*68 Filipino War Veterans,* 406 F.Supp. at 951.

This court can only add to the eloquent language of Judge Renfrew the observation that forty three (43) years after the end of World War II, it is surely high time that justice finally be done for these heroic men and women who stood by this country in our hour of need. Their continuing desire to become United States citizens honors us. They have proved their worth and loyalty in battle. We could acquire no finer citizens. All they ask is that our country keep the promise made to them a half-century ago. Accordingly, the nineteen (19) petitions for naturalization presently pending before the Court are GRANTED. FOR IT IS SO ORDERED.

## APPENDIX

## INDIVIDUAL PETITIONS

### 1. ANDRES LAXAMANA CASTILLO

The government contends that petitioner Castillo cannot prove service under Section 701, because the petitioner's affiants do not qualify since they were not United States citizens before the expiration of the statute. Furthermore, the government contends that Castillo does not qualify because his service is not recognized by the authorized executive body, the United States Army Reserve Components, Personnel and Administrative Center, St. Louis, Missouri.

Petitioner Castillo alleges service in World War II from February 15, 1945 to November 11, 1945 with the USAFFE Combat Co. Hq. Bn., 66th Infantry. Petitioner Castillo submitted the affidavits of two individuals who are United States citizens and who were officers during World War II. The affiants are Federico R. Bernal and Teodoro Pabros.

Federico R. Bernal stated in his sworn affidavit that he is a United States citizen and that he was discharged on June 6, 1949 as a First Lieutenant. Bernal stated that he knows that Castillo served in the Combat Company, Hq. Bn., 66th Infantry, because he personally called upon Castillo at the General Headquarters of the USAFIP, NL, located at Camp Spencer, Paraior, Bacnotan, La Union Philippines. Petitioner Castillo also relies on the affidavit of Teodoro Pabros. Pabros stated in his sworn affidavit that he is a United States citizen and that he was discharged on March 3, 1946 as a Private. He was inducted into the USAFFE and assigned to "C" Company, 1st Bn., 14th Infantry. Pabros stated that the regiment he was with and Castillo's regiment constituted the USAFIP/NL. They fought side by side against the Japanese in all guerilla activities including the final liberation campaign.

The affidavits of petitioner Castillo satisfy his burden of proving that he served with a recognized armed force. Both affidavits are from individuals who are United States citizens and who were officers during World War II. The affiants have attested to Castillo's service during the war. The court finds that the affiants are credible and their statements are accurate. Therefore, petitioner Castillo is eligible for naturalization under Section 701 of the Act.

### 2. ADRIANO SARMIENTO DUCO

The government contends that petitioner Duco is ineligible for naturalization, be-

cause his affiants are not of the requisite statutory rank or were not United States citizens prior to the expiration of the Act. Furthermore, the government contends that his service is not recognized by an authorized executive body and therefore he does not qualify under Section 701.

Petitioner Duco alleges service from March 1, 1942 to October 8, 1944 with the USAFFE, Hq. Co., 13th Infantry, Det., 11th Division. Duco submitted affidavits of two individuals who are United States citizens and who were officers during World War II. The affiants are Nicholas Ranesas and Jose G. Baldanado.

Nicholas Ranesas stated in his sworn affidavit that he is a United States citizen and that he was a member of the Philippine Scouts, (AUS) as a Private First Class and subsequently a member of the USFIP, Guerilla Forces, 15th Infantry with the rank of Sergeant. Ranesas stated that he knows Duco was inducted into the USAFFE by Lt. Col. Feliciano Madamba at Bado, Ilocos Norte, Philippines on March 1, 1942, with the rank of Corporal. Furthermore, he states that Duco was assigned to the Headquarters Company up to the time he was discharged from the service by the processing team sent by the AFWESPAC. Petitioner Duco also relies on the affidavit of Jose G. Baldonado. Mr. Baldonado states in his sworn affidavit that he is a United States citizen and a member of the Intelligence Unit, 121st Infantry, USAFIP, NL with the rank of Sergeant. Baldonado states that he knows Duco was inducted in March, 1945 at the rank of Corporal and was assigned to the 13th Infantry, Detachment, 11th Division until his discharge in November, 1946.

The affidavits of petitioner Duco satisfy his burden of proving that he served in an armed force. The affiants have attested to Duco's service during World War II. Although the government contends that the affidavits are invalid because the affiants did not set forth their dates of citizenship, the court concludes that the dates of citizenship are irrelevant. The fact that they have sworn that they are United States citizens is sufficient. Finally, despite the

government's contention that there is some question as to Duco's actual discharge date, after a thorough review of the transcript of Mr. Duco's examination by the INS, it appears that Duco's discharge date, as he has stated and which is verified by the affiants, is November 28, 1946. The October 8, 1944 date which Duco gave at his hearing was not his discharge date but the date that his unit disbanded. The court finds that the affiants are credible and the affidavits are accurate. Therefore, petitioner Adriano Sarmiento Duco is eligible for naturalization under Section 701 of the Act.

### 3. AMBROCIO CABUSAO HICBAN

The government contends that petitioner Hicban is ineligible for naturalization, because his affiants were not United States citizens prior to the expiration of the statute. Furthermore, the government contends that Hicban's service is not recognized by an authorized executive body.

Petitioner Hicban alleges service from December 15, 1941 to December 10, 1945, with the Motor Pool QMC, Div. Hq., and the 51st Div., USAFFE. Petitioner Hicban has submitted two affidavits of individuals who are United States citizens and who were officers during World War II. The affiants are Jesus A. Galano and Alfredo J. Viray.

Jesus A. Galano stated in his sworn affidavit that he is a United States citizen and was discharged on January 30, 1946. He served in the Mountain Corps. Regiment, East Central Luzon Guerilla Area (ECLGA) with the rank of First Lieutenant. He states that he knows petitioner Hicban is a bonafide member of the 51st Infantry, USAFFE, with the rank of Private First Class from December 15, 1941, until the surrender of the USAFFE in Battan on April 9, 1942. Petitioner Hicban also relied on the affidavit of Mr. Alfredo J. Viray. Mr. Viray stated in his sworn affidavit that he is a United States citizen and was discharged on May 22, 1947 with the rank of Major. He was assigned to various units and was a prisoner of war up until his release in 1942. Viray states that he

knows petitioner Hicban was a member of the Motor Pool, QMS Division, USAFFE.

The affidavits of petitioner Hicban satisfy his burden of proving that he served in an armed force. The affiants have attested to Hicban's service during World War II. The court finds that the affiants are credible and their statements are accurate. Therefore, petitioner Hicban is eligible for naturalization under Section 701 of the Act.

### 4. FRANCISCO ARCE IGNACIO

The government contends that petitioner Ignacio is ineligible for naturalization, because his service is not recognized by an authorized executive body. Furthermore, the government questions the service dates of petitioner Ignacio. Petitioner Ignacio began service on September 16, 1942. The government contends that this is virtually impossible since he would have only been 12 at the time of his induction. Petitioner Ignacio was born on March 26, 1930.

Petitioner Ignacio alleges service from September 16, 1942 to October 15, 1945 with the Tenth Military District. Ignacio submitted two affidavits of individuals who are United States citizens and who were officers during World War II. The affiants are Angelo S. Cruz and Mario M. Lorenzana.

Angelo S. Cruz stated in his sworn affidavit that he is a United States citizen and a retired Brigadier General with the USAFFE. He knows petitioner Ignacio because he served with petitioner in the 109th Infantry Division, and the Tenth Military District under the command of Colonel Wendell Fertig. Petitioner also relies on the affidavit of Mario M. Lorenzana. Mario M. Lorenzana stated in his sworn statement that he is a United States citizen and was discharged on June 30, 1946. He was a First Sergeant with "H" Company, Second Battalion, 102nd Infantry Regiment, 101st Division of the USAFFE. Lorenzana states that he knows petitioner Ignacio served in the guerilla command of Colonel Wendell Fertig with the rank of Private.

The affidavits of petitioner Ignacio satisfy his burden of proving that he served in an armed force. The affiants have attested to Ignacio's service during World War II. The court finds that the affiants are credible and their statements are accurate. Moreover, the court finds that many men who served in World War II were youths. Therefore, it is not surprising to the Court that a twelve year old, such as petitioner, would serve during the war. Therefore, petitioner Ignacio is eligible for naturalization under Section 701 of the Act.

### 5. UROSIA S. ECHAVIA aka UROSIA ECHAVIA OQUIAS

The government contends that petitioner Oquias is ineligible for naturalization, because her affiants are not of the requisite military rank. Furthermore, the government contends petitioner's service is not recognized by an authorized executive body.

Petitioner Oquias alleges service from February 14, 1943 to May 31, 1945, with the Women's Auxillary Military Service, Infantry. Oquias submitted two affidavits of individuals who are United States citizens and who were officers during World War II. The affiants are Marcela Turco Espiritu and Margarita Zamoras Batula.

Marcela Espiritu states in her sworn statement that she is a United States citizen. She was inducted into the Women's Auxillary Service on February 14, 1943, in Maribojoc, Bohol, Philippines, together with Oquias. Both were assigned and served at the Dipatlong Field Hospital under the command of Dr. Vicente Sanchez, Commanding Officer, and Lt. Natividad Barcenas Asuque, Jr. Officer. They were designated as first aiders and medical assistants in the caring of the wounded and the sick soldiers in the area. Both served in this outfit until the liberation in 1945. Petitioner also relies on the affidaivt of Margarita Zamoras Batula. Margarita Zamoras Batula states in her sworn affidavit that she is a United States citizen. She was assigned to the Dipatlong Field Hospital together with Oqiuas as a first aider and medical assistant. Both were under the command of Dr. Vicente Sanchez, Commanding Officer.

The affidavits of petitioner Oquias satisfy her burden of proving that she served in an armed force. The court finds that the affiants are credible and their statements are accurate. Therefore, petitioner Oquias is eligible for naturalization under Section 701 of the Act.

### 6. LINA SHINYO RIZAL

The government contends that petitioner Rizal is ineligible for naturalization because her service is not recognized by an authorized executive body.

Petitioner Rizal alleges service from April 4, 1945 to May 5, 1945 with the Engineering Aviation, Batallion "C" Company. Rizal submitted two affidavits of individuals who are United States citizens and who were officers during World War II. The affiants are Crisanta Alcasid Perez and Ananias F. Panganiban.

Crisanta Perez states in her sworn affidavit that she is a United States citizen and that she was discharged on September 26, 1945, with the rank of Sergeant. She states that she knows petitioner Rizal was a Private during World War II and that she was assigned to the Medical Corps as a first aider. Petitioner also relies on the affidavit of Ananias Panganiban. Ananias Panganiban states in her sworn affidavit that she is a United States citizen and that she served as an officer in President Quezon's Guerilla Unit with the rank of Staff Sergeant. She knows that petitioner Rizal was an active member of the Guerilla organization and that she was inducted on May 5, 1943 by Major Isaac S. Centeno with the rank of Private. She was designated as first aider of the Medical Corps under the direct command of First Lieutenant Galicano Ilagan. Panganiban further states that Rizal treated the sick and wounded and cared for the escaped internees from the Japanese concentration camp Los Banos, Laguna.

The affidavits of petitioner Rizal satisfy her burden of proving that she served in an armed force. The affiants have attested to Rizal's service during World War II. The court finds that the affiants are credible and their affidavits are accurate.

Therefore, petitioner Rizal is entitled to naturalization under Section 701 of the Act.

### 7. DIOSDADO DOMINGO SALVADOR

The government contends that petitioner Salvador is ineligible for naturalization because his service is not recognized by an authorized executive body.

Petitioner Salvador alleges service from December 21, 1941 to July 4, 1946, with the Anti/Sabotage Regiment, PA USAFFE. Salvador submitted affidavits of two individuals who are United States citizens and who were officers during World War II. The affiants are Fred A. Del Rosario and Santiago C. Marquez.

Fred A. Del Rosario stated in his sworn affidavit that he is a United States citizen and that he was discharged on August 28, 1947. He was a Second Lieutenant and assigned as Platoon Leader of "G" Company, Second Batallion, 31st Division of the USAFFE. He knows that petitioner Salvador served in several engagements against the Japanese occupation forces and that he served continuously as Second Lieutenant with the QM Laundry Company, Philippine Army. He knows that Salvador was inducted into the United States Army sometime in December, 1941, by the commanding officer of the Anti/Sabotage Regiment, PA USAFFE. Petitioner also relies on the affidavit of Santiago C. Marquez. Santiago C. Marquez stated in his sworn affidavit that he is a United States citizen and that he was discharged in July, 1942. He served as a Colonel in the Philippine Army with the Headquarters Company, 21st Infantry Division, Philippine Army, under Brigadier General Mateo Capinpin. He knows that petitioner Salvador served in the Anti/Sabotage Regiment, PA USAFFE.

The affidavits of Salvador satisfy his burden of proving that he served in an armed force. The court finds that the affiants are credible and that the affidavits are accurate. The affiants have attested to Salvador's service during World War II. Therefore, petitioner Salvador is eligible

for naturalization under Section 701 of the Act.

### 8.  JUSTO HERRERA SAN JOSE

The government contends that petitioner San Jose is ineligible for naturalization, because his service is not recognized by an authorized executive body.

Petitioner San Jose alleges service from June 10, 1942 to January 30, 1946, with the "L" Company, Third Batallion, 71st Infantry Regiment.  Petitioner San Jose submitted affidavits of two United States citizens who were officers during World War II.  The affiants are Lucito C. Santiago and Ildefonso M. Manalo.

Lucito Santiago stated in his sworn affidavit that he is a United States citizen and that he was discharged on October 15, 1946.  He served as a Second Lieutenant with the 44th Hunter/ROTC Guerilla Regiment.  He knows that petitioner San Jose served with the 71st Infantry Regiment, Ramsey Unit East Central Luzon Guerilla Area (ECLGA) with the rank of Technical Sergeant.  Petitioner relies on the affidavit of Ildefonso M. Manolo.  Ildefonso M. Manalo stated in his sworn affidavit that he is a United States citizen and that he was honorably discharged in August, 1945.  He served as a member of the USAFFE with the rank of Sergeant.  He knows petitioner San Jose served under the command of Colonel Edwin Ramsey, ECLGA, Manila Military District as a Technical Sergeant.  He knows that during the Japanese occupation San Jose's commanding officer ordered him to join the defunct military police department.

The affidavits of petitioner San Jose satisfy his burden of proving that he served in an armed force.  Both affiants are United States citizens and were officers during World War II.  The court finds that the affiants are credible and the affidavits are accurate.  Therefore, petitioner San Jose is eligible for naturalization under Section 701 of the Act.

### 9.  VIRGINIA TIBURCIO AKA VIRGINIA BELIZANO BAYABO

The government contends that petitioner Bayabo is ineligible for naturalization because her service is not recognized by an authorized executive body.

Petitioner Bayabo alleges service from March 6, 1944, to April 13, 1945, with the Blue Lake Batallion Hunter's ROTC.  Bayabo submitted affidavits of two individuals who are United States citizens and who were officers during World War II.  The affiants are Gonzalo Magsalin and Artemio A. Almendral.

Gonzalo Magsalin states in his sworn affidavit that he is a United States citizen and served in the Hunters–ROTC Guerrillas with the rank of Captain.  Magaslin was the officer in charge of the emergency hospital.  He came to know petitioner Bayabo who was serving as an attendant and first aider in the Lake Shore Emergency Hospital in Binan, Laguna.  He knows that petitioner was inducted into the Blue Lake Batallion, Hunters–ROTC Guerrillas by Captain Marcial Alintanahin.  Petitioner also relies on the affidavit of Artemio A. Almendral.  Artemio A. Almendral stated in his sworn affidavit that he is a United States citizen and that he was discharged on September 2, 1945.  He served in the Hunters–ROTC Guerrillas with the rank of First Lieutenant.  He knows that petitioner Tiburcio rendered service in the Blue Lake Batallion of the Hunters ROTC unit as a Corporal and that her name is carried as such in the approved revised reconstructed Guerrilla Roster of their unit.

The affidavits of Bayabo satisfy her burden of proving that she served in a recognized armed force.  The affiants are United States citizens and were officers during World War II.  The affiants have attested to Bayabo's service during World War II.  The court finds that the affiants are credible and the affidavits are accurate.  Therefore, petitioner Bayabo is entitled to naturalization under Section 701 of the Act.

### 10.  MACEDONIA KABILING aka MACEDONIA KABILING MACASPAC

The government contends that the petitioner is ineligible for naturalization, be-

cause her service is not recognized by an authorized executive body.

Petitioner Macaspac alleges service from June 23, 1942 to September 27, 1945 in the FLAS aka Anderson Fil–American Guerillas, 3rd Infantry, 85th Division. Petitioner Macaspac submitted the affidavits of two individuals who are United States citizens and who were officers during World War II. The affiants are Teofilo D. Vitug and Vincente B. Dimson.

Teofilo D. Vitug states in his sworn affidavit that he is a United States citizen and that he served with the USAFFE in the Philippines with the rank of 1st Lieutenant. He was present at the time that the petitioner was inducted on June 23, 1942 in the Medical Detachment by Benigno N. Layug as First Lieutenant. Petitioner also relies on the affidavit of Vincente B. Dimson. Vincente B. Dimson stated in a sworn affidavit that he is a United States citizen and that he served in the Pampanga Military District, ECLGA in the Philippine with the rank of 1st Lieutenant. He knows that petitioner Macaspac joined and served with the Medical Detachment as 1st Lieutenant, 3rd Infantry, 85th Division, Region XV, Anderson Fil–American Guerilla in Lubao, Pampanga, Philippines. He states that petitioner tried to solicit medicines at his unit for use in their medical detachment.

The affidavits of petitioner Macaspac satisfy her burden of proving that she served an armed force. Both affiants are United States citizens and were officers during World War II. The affiants have accurately attested to Macaspac's service during World War II. The court finds that the affiants are credible and the affidavits are accurate. Therefore, petitioner Macaspac is entitled to naturalization under Section 701 of the Act.