Dr. Bernardo ORTEGA,
Petitioner–Appellee,

v.

UNITED STATES of America,
Respondent–Appellant.

No. 87–5924.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1988.

Decided Nov. 21, 1988.

---

be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser.

Michael C. Johnson, Asst. U.S. Atty., Los Angeles, Cal., for respondent-appellant.

Bonnie Stern Wasser, Los Angeles, Cal., for petitioner-appellee.

Before TANG, FLETCHER and PREGERSON, Circuit Judges.

PER CURIAM:

The United States appeals the district court's grant of a petition for naturaliza-

tion to appellee Dr. Bernardo Ortega pursuant to the Second War Powers Act of 1942. We reverse.

FACTS

Appellee Dr. Bernardo Ortega is a 73–year old native and citizen of the Philippines. During the Second World War, he served on behalf of the U.S. armed forces in the Philippine Commonwealth Army. His service lasted from October 1942 until his honorable discharge in August 1944. In June 1946, Ortega attempted to apply for naturalization at the U.S. Embassy in Manila, but was sent away and told to wait for further instructions. No one from the Embassy contacted him thereafter, nor did the Embassy advise him of the proper procedures for making such an application. The Government concedes that Ortega attempted to apply.

Ortega came to the United States as a visitor in 1981. On November 13 of that year, he submitted an application to the Immigration and Naturalization Service (INS) for naturalization under section 701 of the Nationality Act of 1940, as amended by the Second War Powers Act of 1942, Pub.L. No. 77–507, 56 Stat. 182, §§ 701–705 (1942) ("the Act").[1] He was not interviewed by the Immigration and Naturalization Service (INS) until late 1983; he inquired about the status of his application twice in 1984 and again in July 1985.

On September 16, 1985, the INS interviewed Ortega a second time and informed him that he did not qualify for naturalization under section 702 of the Act because he was already discharged from the military at the time he made his inquiry at the Embassy.[2] Several months later, Ortega

---

1. Section 701, as originally enacted, provided: [A]ny person not a citizen, regardless of age, who has served or hereafter serves honorably in the military forces of the United States during the present war ... may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no ... period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petition in his own handwriting, or meet any educational test[.]

Section 701 was later amended to require that petitioners filing for naturalization under its terms do so by December 31, 1946.

2. Under section 702, persons who qualified for naturalization under section 701 but who, "while serving honorably" were not able to travel to a court of naturalization jurisdiction, could be naturalized by an INS representative such as

filed a motion in district court to calendar naturalization proceedings, which he subsequently withdrew without prejudice. On July 25, 1986, the INS recommended denial of his naturalization petition.

After two oral arguments and consideration of written briefs, the district court granted the petition for naturalization. The court found that by attempting to apply for naturalization at the Embassy, Ortega had "constructively filed his application" before December 31, 1946, the statutory cutoff for naturalization petitions under the Act. Since Ortega had also served honorably before the December 28, 1945 deadline, the district court determined that Ortega met the definition of a "Category I veteran" set forth in *Naturalization of 68 Filipino War Veterans*, 406 F.Supp. 931 (N.D.Cal.1975).

Following *68 Veterans*, the court held that Ortega's application was timely under the Act. Since Ortega had been found by a hearing officer to be otherwise eligible for naturalization, the district court granted his petition, but stayed the taking of the oath pending the outcome of this appeal.

We have jurisdiction under 28 U.S.C. § 1291. This appeal raises questions of law, which we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984) (en banc).

## DISCUSSION

In 1942, Congress amended the Nationality Act of 1940 by passing the Second War Powers Act. The Act sought to reward foreign servicemen who had served with United States forces by exempting them from customary naturalization requirements, such as residence in the United States and proficiency in English. At the end of the war, Congress amended section 701 by requiring all petitions to be filed before December 31, 1946. Pub.L. No. 79–270, § 202(c), 59 Stat. 658 (1945). The amendment also added section 706, which limited the statute's reach to those veter-

the INS examiner in the Philippines. Since Ortega was discharged when he went to the Embassy, he did not apply "while serving."

ans who had served before December 28, 1945.[3]

Though by its terms the Act expired at the end of 1946, many Filipino veterans have since been naturalized under the Act on the grounds that they were denied the opportunity to have their petitions considered while the Act was in force as a result of the United States' withdrawal of the INS examiner from the Philippines for nine months in 1945–46. In *68 Veterans*, the district court grouped veterans who had petitioned for naturalization under section 702 of the Act into three categories. Category I included all petitioners who filed for naturalization while in the service and before the end of 1946. These veterans, the court found, proved that they "did all they could in 1945 and 1946 to become naturalized ... and that they should be considered to have 'constructively filed' petitions for naturalization pursuant to the statutory requirements." *68 Veterans*, 406 F.Supp. at 936–37. The court held that the Government was estopped from relying on the expiration date of the Act to deny Category I applications. Since the petitions had been constructively filed in timely fashion, the court ordered that Category I petitions be granted.

The Government chose not to appeal *68 Veterans*, and has since adopted a policy of granting petitions of all qualified Category I veterans. *See United States v. Mendoza*, 464 U.S. 154, 157 n. 2, 104 S.Ct. 568, 571 n. 2, 78 L.Ed.2d 379 (1984); *Barretto v. United States*, 694 F.2d 603, 608 n. 11 (9th Cir.1982), *vacated on other grounds*, 465 U.S. 1001, 104 S.Ct. 990, 79 L.Ed.2d 224 (1984).

The district court determined that Ortega was a Category I veteran since he served before the end of 1945 and constructively filed for naturalization before the end of 1946. The Government argues that *68 Veterans* and its categorization scheme are inapplicable to Ortega's case, since the ex-

3. The entire Second War Powers Act was repealed by the comprehensive Immigration and Nationality Act of 1952, Pub.L. No. 82–414, § 403(a)(42), 66 Stat. 163, 280.

aminer was not withdrawn until after Ortega was discharged. Even if it were applicable, the Government maintains, Ortega would not qualify as a Category I veteran because he was no longer in the service at the time he sought naturalization. Under either line of reasoning, it is the Government's view that the district court lacked the authority to grant Ortega's petition for naturalization.

This case is squarely controlled by the Supreme Court's recent decision in *INS v. Pangilinan*, — U.S. —, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), which mandates reversal.[4] Under *Pangilinan*, Category I includes "only veterans who had taken some affirmative steps to obtain naturalization ... while they were still on active duty." *Id.* at —, 108 S.Ct. at 2217. Since Ortega did not apply until after his discharge, the district court erred in classifying him as a Category I veteran.

Nor can Ortega sustain, after *Pangilinan*, his argument that his due process rights were violated by the Government's inattention. His claim is indistinguishable from that of Bonifacio Manzano, one of the respondents in *Pangilinan*. Like Ortega, Manzano inquired about naturalization at the Embassy in the summer of 1946, after being discharged, and was told no one could assist him. The Supreme Court rejected the claims of Manzano and the other respondents that they were "entitled as a matter of due process to individualized notice of any statutory rights and to the continuous presence of a naturalization officer in the Philippines from October 1945 until July 1946." *Id.*

Absent a showing of Category I status or a constitutional violation, the district court had no authority to overlook the expiration date of the Act and grant Ortega's naturalization petition pursuant to its powers of equity. "Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations." *Id.*

Because Ortega does not qualify as a Category I veteran, *Pangilinan* forecloses him from being naturalized under the Act.[5]

REVERSED.

PREGERSON, Circuit Judge, dissenting:

I dissent. The conscience of our nation should tell us that Dr. Bernardo Ortega deserves better treatment from a government he valiantly served in time of war.

---

**4.** The majority agrees with the dissent that Dr. Bernard Ortega deserves better treatment from our Government. Unfortunately, legal precedent deprives us of discretion to do equity.

**5.** Ortega requests attorney's fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). EAJA requires a court to award attorney's fees to a party who prevails against the Government unless the position of the United States was "substantially justified." As Ortega has not prevailed here, he has no claim to fees.