**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JESS MUSTANICH,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 04-74290

Agency No.
A36-542-395

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 9, 2008—Pasadena, California

Filed March 11, 2008

Before: Jerome Farris and Milan D. Smith, Jr.,
Circuit Judges, and H. Russel Holland,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable H. Russel Holland, Senior United States District Judge
for the District of Alaska, sitting by designation.

## COUNSEL

Robin C. Carr, Law Offices of Robin Carr, San Diego, California, for the petitioner.

Carl H. McIntyre, Jr., and Patrick J. Glen, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

In this appeal, we consider Petitioner Jess Mustanich's (Mustanich) petition for review of a final order of removal by the Board of Immigration Appeals (BIA). Mustanich was convicted of burglary and subsequently ordered removed under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who committed an aggravated felony. He seeks to terminate his removal proceedings on the ground that he is a United States citizen, arguing that although he did not file an application for naturalization prior to the applicable statutory deadline, the United States is equitably estopped from denying his citizenship because the Government's own affirmative misconduct precluded a timely filing. We reject this argument and deny the petition on the authority of *INS v. Pangilinan*, 486 U.S. 875 (1988), which established that citizenship cannot be conferred by estoppel where the statutory requirements for naturalization have not been satisfied.

Mustanich also moves to transfer his case to the district court for an evidentiary hearing regarding his possible United States citizenship. We deny the motion because there is no genuine issue of material fact concerning nationality. *See* 8 U.S.C. § 1252(b)(5)(A).

## I. BACKGROUND

Mustanich was born in El Salvador on August 15, 1978 and adopted shortly thereafter by two United States citizens. In February 1979, he became a lawful permanent resident of the United States. Because Mustanich was born outside the country, he was required to satisfy the requirements of 8 U.S.C. § 1433 before becoming a naturalized citizen.[1] One require-

---

[1] The Child Citizenship Act of 2000 (CCA) established that a naturalization application need not be filed in accordance with § 1433 if a child born

ment of that statute was that he apply for naturalization prior to his eighteenth birthday. 8 U.S.C. § 1433(a)(3).

Mustanich's father, James Mustanich (James), made several unsuccessful attempts to submit a timely application for naturalization on his son's behalf. These attempts began in 1988, when he tried to file a completed application at an INS field office in San Jose, California. An INS employee refused to accept the application because it was beyond her expertise, and told James to contact INS by telephone for assistance. James telephoned the agency a few days later. The person who answered took his contact information and explained that another INS employee would call him about the matter in the near future, but a call never came. James telephoned again approximately one month later asking for instructions on how to file the application, but the response was the same: INS took James's contact information and stated that it would call him back, but never did. Two or three months later, James called again and received the same treatment. Neither James nor Mustanich was represented by an immigration lawyer during this process.

In approximately 1990, Mustanich became a ward of the Superior Court of California, Juvenile Division, due to unspecified criminal conduct. Between 1991 and 1994, James made five separate requests for the court to look into the issue of Mustanich's citizenship because the naturalization application still had not been filed. The court ordered Mustanich's social worker to provide assistance, but the social worker apparently took no action. James also raised the citizenship issue with Mustanich's probation officer sometime between

outside the United States satisfies certain requirements for automatic citizenship under 8 U.S.C. § 1431. *See* Pub. L. No. 106-395, § 102, 114 Stat. 1631, 1632 (2000). However, Mustanich was not eligible for automatic citizenship under § 1431 because he was over the age of 18 on February 27, 2001, the effective date of the CCA. *Hughes v. Ashcroft*, 255 F.3d 752, 758-59 (9th Cir. 2001).

1994 and 1996, but the probation officer did not furnish any helpful information. Mustanich's eighteenth birthday passed on August 15, 1996 without the application having been filed.

Mustanich was convicted of first-degree burglary in April 1997 and sentenced to four years in prison. While incarcerated, he was convicted of possessing a sharp instrument and sentenced to an additional four years. In approximately May 1997, James received a telephone call from an INS officer who had been assigned to Mustanich's case. James again requested guidance on how to obtain citizenship for his son, but the officer provided no helpful advice.

In July 2003, INS charged Mustanich with removability as an aggravated felon because of his burglary conviction. Mustanich sought to terminate the proceedings on the ground that the United States's repeated failure to provide instructions on how to file the naturalization application amounted to affirmative misconduct that estopped the Government from denying him citizenship. Mustanich also applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT) on the theory that he would be persecuted and tortured in El Salvador because of his status as an American.

The Immigration Judge (IJ) rejected Mustanich's arguments. The IJ concluded that the failure to comply with 8 U.S.C. § 1433(a)(3) was not remediable by equitable estoppel because the United States had not engaged in affirmative misconduct. Mustanich was found ineligible for asylum and withholding of removal because he had been convicted of a particularly serious crime, and his CAT application was denied for insufficient evidence. The IJ accordingly ordered Mustanich removed to El Salvador on February 10, 2004. The BIA summarily affirmed, and Mustanich timely petitioned for this court's review.

## II. JURISDICTION

We lack jurisdiction "to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. §] 1227(a)(2)(A)(iii)."[2] 8 U.S.C. § 1252(a)(2)(C). However, we retain jurisdiction to review questions of law, including whether the jurisdictional bar at § 1252(a)(2)(C) applies. *Id.* at § 1252(a)(2)(D); *De Jesus Melendez v. Gonzales*, 503 F.3d 1019, 1023 (9th Cir. 2007). So long as there is no genuine issue of material fact concerning nationality, this jurisdiction permits us to determine whether an individual ordered removed is an alien as a matter of law. *See* 8 U.S.C. § 1252(b)(5)(A); *Hughes*, 255 F.3d at 755.

## III. DISCUSSION

### A. The Estoppel Claim

Mustanich seeks to terminate removal proceedings on the ground that he is a United States citizen.[3] He argues that although he did not timely file an application for naturalization in accordance with 8 U.S.C. § 1433(a)(3), the United States is equitably estopped from denying his citizenship because the Government's conduct precluded a timely filing. Although we sincerely lament that Mustanich and his family were not better served by the representatives of the United States from whom they repeatedly sought assistance, we are

---

[2]The parties do not dispute that the offense for which Mustanich was convicted is covered by § 1227(a)(2)(A)(iii).

[3]We do not address the denial of Mustanich's applications for asylum, withholding of removal, and relief under CAT because he has not raised those issues on appeal. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

bound by the law as declared by the Supreme Court, and must reject his argument.[4]

**[1]** The Constitution confers upon Congress exclusive authority to establish rules of naturalization. U.S. Const. art. I, § 8, cl. 4; *INS v. Pangilinan*, 486 U.S. 875, 882 (1988). The corollary to this allocation of authority is that "the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *Id.* at 883-84. "Rather, it has been given them as a specific function to be performed in strict compliance with the terms" set forth by Congress. *Id.* at 884. "Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations." *Id.* at 885.

**[2]** Bound by *Pangilinan*, we hold that the Government is not estopped from denying Mustanich citizenship. Congress plainly requires that an individual born abroad apply for naturalization prior to his or her eighteenth birthday. 8 U.S.C. § 1433(a)(3). That requirement cannot be ignored. *See* 8 U.S.C. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise."). Mustanich concedes that he did not file his application on time. Estoppel in these circumstances would amount to precisely the type of equity-based departure from the requirements of the immigration statutes that *Pangilinan* prohibits. *See* 486 U.S. at 885.

This conclusion draws support from *Ortega v. United States*, 861 F.2d 600 (9th Cir. 1988), which involved an alien who attempted to apply for naturalization in accordance with a certain statutory deadline but never actually filed the appli-

---

[4]We review this matter de novo. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002).

cation. The alien visited a United States embassy to complete the paperwork before the deadline, but was turned away and told to await instructions from embassy officials. *Id.* at 601. No one contacted him thereafter, and the embassy did not advise him on the proper procedures for completing his application. *Id.* The district court granted the alien's petition for naturalization on the theory that he "constructively" filed the application in time by attempting to do so at the embassy, but we reversed on the basis of *Pangilinan*, explaining that the "district court had no authority to overlook the expiration date of the [applicable statute] and grant [the alien's] naturalization petition pursuant to its powers of equity." *Id.* at 603. Other cases have followed this approach. *See Carrillo-Gonzalez v. INS*, 353 F.3d 1077, 1079-80 (9th Cir. 2003) (applying *Pangilinan* to preclude an equity-based departure from another immigration statute); *Agcaoili v. Gustafson*, 870 F.2d 462, 463-64 (9th Cir. 1989) (same).

The finding that Mustanich cannot obtain citizenship by estoppel is also consistent with *Wauchope v. United States Department of State*, 985 F.2d 1407 (9th Cir. 1993), which involved an equal protection challenge to a law that conferred citizenship on the foreign-born children of United States citizen males, but not females. The district court held the law unconstitutional and used its equitable powers to award citizenship as a remedy. *Id.* at 1410. We found the remedy to be consistent with *Pangilinan* because *Pangilinan* only "precludes the judiciary from exercising its statutory powers of naturalization to redress *statutory* violations except in strict conformity with Congress' authorizing legislation," not from utilizing "traditional constitutional remedies to rectify *constitutional* violations." *Id.* at 1418 (emphasis in original). Unlike the plaintiff in *Wauchope*, Mustanich does not assert estoppel on the theory that the denial of his citizenship is unconstitutional. *Pangilinan*, therefore, still governs.

Mustanich argues that *Pangilinan* does not apply because he is not requesting the use of estoppel to confer citizenship,

but rather to preclude the United States from denying his application for citizenship. We see no meaningful difference. With the exception of the requirement of a timely application, Mustanich satisfied all of the requirements for naturalization under 8 U.S.C. § 1433. Estopping the Attorney General from denying Mustanich's application would resolve the remaining hurdle in his favor and compel the issuance of a certificate of citizenship. *See* 8 U.S.C. § 1433(a) ("The Attorney General *shall* issue a certificate of citizenship . . . upon proof, to the satisfaction of the Attorney General, that the following conditions have been fulfilled . . . .") (emphasis added). The rule in *Pangilinan* cannot be avoided where the immediate and necessary consequence of the requested equitable relief is the conferral of citizenship. *See Miller v. Albright*, 523 U.S. 420, 455 (1998) (Scalia, J., concurring) (citing *Pangilinan* for the proposition that the Court is unable to declare citizenship or "order[ ] the State Department to approve . . . application[s] for citizenship").

We also reject the suggestion that the Government's repeated failure to assist Mustanich allows us to bypass the holding of *Pangilinan*. In *Pangilinan*, several Filipino veterans of World War II sought United States citizenship under an expired statute that had made it easier for INS to grant petitions for naturalization to aliens who served honorably in the United States Armed Forces during the War. 486 U.S. at 877. The veterans argued that their failure to seek citizenship in a timely manner should be excused because the Attorney General unlawfully revoked the authority of INS to grant petitions in the Philippines for a ten-month period shortly before the expiration of the statute, thereby depriving qualifying individuals of the opportunity to obtain citizenship. *See id.* at 885. We had found this argument persuasive, holding that the Attorney General's action violated the statute and granting naturalization as an equitable remedy. *Pangilinan v. INS*, 796 F.2d 1091 (9th Cir. 1986). The Supreme Court reversed, but only because courts cannot employ equitable remedies to confer citizenship where the statutory requirements for citizen-

ship are unsatisfied, not because "there was no governmental wrong to be remedied." *In re Thornburgh*, 869 F.2d 1503, 1514 (D.C. Cir. 1989). As *Thornburgh* explained, "the Supreme Court either assumed the Ninth Circuit was right about the existence of a law violation or considered the matter irrelevant to its holding." *Id.* at 1514 n.15. Either way, the alleged wrongfulness of the Government's conduct does not create an exception to the rule.

Mustanich cites a number of cases in which estoppel was ordered in the context of immigration proceedings. These cases do not undermine *Pangilinan*. Many of them utilized estoppel to confer a status other than that of citizen and, there-fore, did not interfere with Congress's exclusive constitutional authority to establish rules for naturalization. *See Villena v. INS*, 622 F.2d 1352, 1361 (9th Cir. 1980) (estoppel in support of a claim for a visa-preference classification); *Yoo v. INS*, 534 F.2d 1325, 1328-29 (9th Cir. 1976) (estoppel in support of a claim for permanent-resident status); *Gestuvo v. Dist. Dir. of U.S. INS*, 337 F. Supp. 1093, 1101-02 (C.D. Cal. 1971) (visa-preference classification). The remaining cases that utilized estoppel to grant citizenship predate *Pangilinan* and are district court decisions that are not binding on this court. *See In re Naturalization of Clarino*, 691 F. Supp. 193, 197 (C.D. Cal. 1988); *In re Petition of Tubig in Behalf of Tubig*, 559 F. Supp. 2, 4 (N.D. Cal. 1981); *In re Naturaliza-tion of 68 Filipino War Veterans*, 406 F. Supp. 931, 939 (N.D. Cal. 1975).

**[3]** We therefore hold that Mustanich's removal proceed-ings cannot be terminated on the ground that he is a citizen. Estoppel cannot confer citizenship because not all the require-ments of 8 U.S.C. § 1433(a)(3) have been satisfied. Because estoppel is unavailable, we do not reach the question of whether the traditional requirements for that remedy have been met. *See, e.g.*, *Mukherjee v. INS*, 793 F.2d 1006, 1008-09 (9th Cir. 1986).

## B. The Motion to Transfer

**[4]** Mustanich also moves to transfer his case to the district court for an evidentiary hearing regarding his possible United States citizenship. We deny the motion. Transfer is required only if there is a "genuine issue of material fact" concerning nationality. 8 U.S.C. § 1252(b)(5)(B). Mustanich does not identify any material facts that are genuinely disputed. He cites to the adjudication of a prior petition for habeas corpus, in which the district court stated that Mustanich had "at least a 'substantial' " non-frivolous claim to United States citizenship because he was "adopted by American citizens at age six-months and moved to the United States." *Mustanich v. Gonzales*, 2007 WL 2819732, at \*9, 2007 U.S. Dist. LEXIS 71401, at \*27 (S.D. Cal. Sept. 26, 2007). However, the facts pertaining to his adoption and subsequent immigration are not disputed. Nor is there a genuine dispute concerning the material facts on which the estoppel argument hinges. There is no dispute, for example, about whether Mustanich's father attempted to contact INS multiple times, nor about how INS responded. The only disputes are whether equitable estoppel can confer citizenship and, assuming it can, whether estoppel is warranted in light of the undisputed facts. These are both questions of law now resolved by this court, and for which transfer to a district court is unnecessary.

The petition for review and the motion to transfer are DENIED.