Wang Zong XIAO, Plaintiff,

v.

Janet RENO, in her capacity as Attorney General of the United States; Michael J. Yamaguchi, in his capacity as United States Attorney for the Northern District of California; Reginald L. Boyd, in his capacity as United States Marshal for the Northern District of California; Chris Sales, in her capacity as Acting Commissioner of the Immigration and Naturalization Service; and David Ilchert, in his capacity as District Director for the Immigration and Naturalization Service, Defendants.

No. C–90–0350 WHO.

United States District Court,
N.D. California.

March 2, 1993.

Cedric C. Chao, John D. Danforth, Ruth N. Borenstein, Lisa Bradley, Morrison & Foerster, San Francisco, CA, Paul M. Gordon, Law Offices of Paul M. Gordon, Oakland, CA, for plaintiff.

John A. Mendez, U.S. Atty., Stephen L. Schirle, Chief, Civ. Div., Alberto E. Gonzalez, Sp. Asst. U.S. Atty., San Francisco, CA, Mark C. Walters, Asst. Director, Michele Y.F. Sarko, Alexander H. Shapiro, Attys., Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, DC, for defendants.

## OPINION
## AND ORDER

ORRICK, District Judge.

Defendants move to dismiss all twelve causes of action in plaintiff's first amended complaint ("FAC"). For the reasons stated herein, the Court grants the motion to dismiss the Eleventh Cause of Action, as mandated by the United States Court of Appeals for the Ninth Circuit, and denies the motion to dismiss the remaining eleven causes of action.

### I.

The facts (taken from the Ninth Circuit's opinion in *Wang Zong Xiao v. Barr*, 979 F.2d 151 (9th Cir.1992)) may be summarized briefly.

### A.

Pursuant to 8 U.S.C. § 1182(d)(5)(A), the government paroled plaintiff into the United States from the People's Republic of China ("PRC") to testify at the trial of several criminal defendants in the so-called "Goldfish" case. At that trial, plaintiff testified that Chinese authorities had tortured and coerced him into confessing and testifying falsely; this Court subsequently declared a mistrial. Plaintiff initially sought asylum, but then on February 5, 1990, he filed a complaint seeking declaratory and injunctive

relief to prevent his return to the PRC or delivery into the custody of PRC officials. On July 5, 1990, plaintiff filed his FAC, which, currently, is the operative pleading before the Court. On February 10, 1990, this Court entered a preliminary injunction, ordering that plaintiff remain in the custody of the United States Marshal for the Northern District of California, and enjoining the United States from returning plaintiff to the PRC. This order was to remain in effect pending final adjudication of plaintiff's asylum request.

On July 29, 1991, plaintiff's request for asylum was denied. On February 18, 1992, the INS terminated plaintiff's immigration parole and served him with notice that he was being placed in administrative exclusion proceedings. On the same day, February 18, 1992, plaintiff requested a hearing on his previously filed motion for partial summary judgment on his Eleventh Cause of Action, which alleged that the government is "without legal authority over plaintiff's person and may not remove plaintiff from the United States or return plaintiff to Chinese custody." (FAC ¶ 199.)

On February 20, 1992, the Court granted plaintiff a preliminary injunction preventing the government from moving forward with exclusion or deportation proceedings until final adjudication of the motion for partial summary judgment and final resolution of all appeals arising therefrom. Thereafter, the Court granted plaintiff summary judgment on the Eleventh Cause of Action, and enjoined the government from taking any further action against plaintiff that could place him in jeopardy of a return to the PRC.

Defendants appealed both the preliminary injunction and the grant of summary judgment, alleging (1) that this Court lacked jurisdiction to enjoin exclusion proceedings, (2) that this Court erred in concluding that the INS lacked jurisdiction to place plaintiff in exclusion proceedings, and (3) that this Court erred in granting the preliminary injunction and summary judgment. The Ninth Circuit consolidated the appeals, and in an opinion filed October 30, 1992, vacated this Court's preliminary injunction, reversed this Court's grant of summary judgment, and remanded the case back to this Court "with directions to dismiss the claims in [plaintiff's] Eleventh Cause of Action for lack of jurisdiction." 979 F.2d at 156.

Defendants then filed this motion to dismiss not only the Eleventh Cause of Action but all the remaining eleven causes of action in plaintiff's FAC, not one of which was mentioned in the Ninth Circuit's opinion, or in the mandate.[1]

**B.**

In his FAC, plaintiff states twelve causes of action, including the Eleventh Cause of Action that the Ninth Circuit directed this Court to dismiss. Briefly, these causes of action are herein summarized.

Plaintiff's *first* cause of action is for injunctive relief pending final adjudication of his asylum application, including judicial review. Plaintiff alleges a "danger that defendants will seek to remove plaintiff from the United

---

1. Plaintiff argues that because defendants urged the Ninth Circuit to reach the merits of his remaining eleven causes of action, and because the Ninth Circuit was careful to confine its opinion and its remand order to the Eleventh Cause of Action only, it "impliedly" held that his remaining claims must not be dismissed. Although plaintiff is correct that defendants, citing *Callaway v. Block*, 763 F.2d 1283, 1287–88 n. 6 (11th Cir.1985), argued on appeal that the Ninth Circuit had the authority to consider the validity of plaintiff's remaining claims, plaintiff is not correct as to the significance this Court should attach to the Ninth Circuit's silence on this request.

The Ninth Circuit had jurisdiction over defendants' interlocutory appeal because this Court's Opinion and Order filed June 15, 1992, included an order granting plaintiff's request for an injunction. *See* 28 U.S.C. § 1292(a)(1). It is a debatable question whether a court of appeals, in the course of deciding an interlocutory appeal authorized under § 1292, may review rulings of the district court that are separate and distinct from the ruling that is the subject of the interlocutory appeal. The Eleventh Circuit in *Callaway* cited an impressive array of decisional law and commentary to answer that question in the affirmative. It should be noted, however, that the Eleventh Circuit cited *no* Ninth Circuit authority as support for the conclusion it reached.

Whatever the Ninth Circuit's reason for not reaching the merits of defendants' arguments against all of the causes of action in plaintiff's FAC, this Court will infer nothing from the Ninth Circuit's silence.

States before a final adjudication on plaintiff's asylum application, in violation of plaintiff's statutory rights, and return him to the custody of [the PRC]." (FAC ¶ 96.) Consequently, plaintiff asks this Court to enjoin defendants from removing plaintiff from the United States prior to a final adjudication (including appeal) of his asylum application. (*Id.* ¶ 100.)

Plaintiff's *second* cause of action also is for injunctive relief pending final adjudication of his asylum application, including judicial review. Plaintiff repeats his allegation that defendants will seek to remove him from the United States prior to the completion of the asylum adjudication process, and introduces a new allegation, namely, that "[t]he United States Justice and State Departments are under pressure to return plaintiff to the custody of the Chinese government, regardless of the merits of plaintiff's asylum application." (*Id.* ¶ 111.) Plaintiff asks this Court to enjoin defendants from removing him from the United States prior to a final adjudication (including appeal) of his asylum application. (*Id.* ¶ 117.)

Plaintiff's *third* cause of action is for violation of substantive due process. Plaintiff alleges that defendants, through their actions, "have placed plaintiff into a dangerous predicament. Plaintiff is vulnerable to serious and irreparable injury if he returns to [the PRC], in that the Chinese government will likely torture and execute him as a consequence of his truthful and complete testimony as a U.S. government witness in" the Goldfish case. (*Id.* ¶ 120.) Plaintiff alleges that because of their conduct, defendants owe him "a duty pursuant to the Fifth Amendment to substantively protect plaintiff's life and liberty." (*Id.* ¶ 121.) As a remedy for this alleged constitutional violation, plaintiff seeks a permanent injunction barring defendants from removing him from the United States or from turning him over to the PRC. (*Id.* ¶ 128.)

Plaintiff's *fourth* cause of action is for breach of the government's duty to protect its witnesses pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.* As a remedy for this alleged breach, plaintiff requests relief in the form of a permanent injunction barring defendants from removing him from the United States or from turning him over to the PRC. (FAC ¶ 138.)

Plaintiff's *fifth* cause of action is for breach of the government's duty to exercise ordinary care pursuant to the APA. Plaintiff requests relief in the form of a permanent injunction. (*Id.* ¶ 146.)

Plaintiff's *sixth* cause of action is for equitable estoppel based on affirmative governmental misconduct. Because of that alleged misconduct, plaintiff asserts that he "is entitled to an order permanently estopping defendants from asserting any defenses to plaintiff's asylum application or to [his civil] action, or from asserting any reasons why [defendants] are entitled to remove plaintiff from the jurisdiction of the United States or to return him to the custody of [the PRC] or any representative of" the PRC. (*Id.* ¶ 157.)

Plaintiff's *seventh* cause of action is for violations of 18 U.S.C. § 3508 and the APA. Section 3508 specifies the circumstances under which the Attorney General may request the temporary transfer to the United States of a person held in custody in a foreign country for the purpose of providing testimony in a criminal proceeding. Subsection (b) of that statute provides that where the transfer "is provided for by treaty or convention, by [§ 3508], or both," the transferred person shall be returned to the foreign country without extradition proceedings. Subsection (c), the one upon which plaintiff appears to base his claim, provides that where *no* treaty or convention exists, the Attorney General may exercise his "request and return" authority "if *both* the foreign country and the witness give their consent." 18 U.S.C. § 3508(c) (emphasis added). Plaintiff alleges the absence of any relevant "treaty or convention"; he further alleges the absence of his consent to the transfer, as subsection (c) would appear to require. Plaintiff's requested relief is for a permanent injunction. (FAC ¶ 167.)

Plaintiff's *eighth* cause of action is for violation of procedural due process. Plaintiff alleges that the "consent" of the "witness" required under § 3508(c) must be voluntary, knowing, and informed; to that end, plaintiff

alleges that the procedural safeguards used in obtaining his consent to be brought to the United States were inadequate, and that § 3508 is, therefore, unconstitutional *as applied* to him. Plaintiff requests relief in the form of a permanent injunction. (*Id.* ¶ 177.)

Plaintiff's *ninth* cause of action also is for violation of procedural due process. Here, plaintiff alleges that § 3508 is unconstitutional *on its face,* or at least as applied to all witnesses from the PRC, because, "[t]he coercive nature of the Chinese criminal justice system precludes the adoption of any [adequate] procedural safeguards." (*Id.* ¶ 180.) Plaintiff requests a permanent injunction. (*Id.* ¶ 184.)

Plaintiff's *tenth* cause of action is for violation of 8 U.S.C. § 1182 and the APA. Section 1182, pursuant to which the Attorney General brought plaintiff to this country, grants to the Attorney General the discretion to parole into the United States "any alien *applying for admission* to the United States" for "emergent reasons" or "for reasons deemed strictly in the public interest." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Plaintiff alleges that he did not "apply for admission" to the United States and that the Attorney General's actions violated the express terms of the statute. Plaintiff seeks a permanent injunction. (FAC ¶ 192.)

Plaintiff's *eleventh* cause of action is a petition for writ of habeas corpus. He alleges that he has a valid asylum application and claims that he "is entitled to a permanent discharge from the threat of being removed from the jurisdiction of the United States or being released to the custody of [the PRC] or any representative of" the PRC. (*Id.* ¶ 200.) As noted above, the Ninth Circuit specifically directed this Court to dismiss this cause of action, and this the Court does in this Memorandum Decision and Order.

Plaintiff's *twelfth* cause of action is for violation of the law of nations and international law. Once again, plaintiff seeks a permanent injunction barring his return to the PRC or to representatives of that country. (*Id.* ¶ 208.)

## II.

### A.

Before turning to the Ninth Circuit's opinion, it will be helpful to canvas briefly the grounds for this Court's initial Opinion and Order. Plaintiff moved for summary judgment on his Eleventh Cause of Action (habeas corpus) and defendants countermoved to dismiss plaintiff's FAC in its entirety.

This Court granted plaintiff's motion for summary judgment on the Eleventh Cause of Action for several reasons. First, the Court found on point a line of cases from the Second Circuit that hold that where an alien has not "entered" the United States (i.e., if he has not come to the United States as an applicant for admission), and if he is willing to depart to a third country, that he should be given the right to depart voluntarily. *United States ex rel. Bradley v. Watkins,* 163 F.2d 328 (2d Cir.1947). Thus, the Court agreed with plaintiff's argument that the INS had *no* jurisdiction over plaintiff's case. Second, the Court accepted plaintiff's argument that defendants had a duty to protect him from harm because of his position as a government witness. *Crain v. Krehbiel,* 443 F.Supp. 202 (N.D.Cal.1977).

In arriving at its decision, this Court rejected defendants' argument that the Court was without jurisdiction because of plaintiff's failure to exhaust his administrative remedies. The Court found inapplicable 8 U.S.C. § 1105a(c), the Immigration and Nationality Act ("INA") exhaustion provision, because plaintiff was challenging the INS's authority over him, as opposed to an "order of deportation or exclusion." 8 U.S.C. § 1105a(c). The Court specifically found: (1) that the administrative remedies available to plaintiff would be "inadequate or not efficacious" because he was challenging the very adequacy of the administrative hearing, and because of the long delay on the INS's part in processing plaintiff's application; (2) that the Court did not owe the INS great deference because no "especially sensitive political functions" were at issue; and (3) that defendants' ripeness objections were without merit.

Finally, this Court held that an independent and alternative ground supported its

decision, namely, the Court's "inherent supervisory powers to protect witnesses appearing before it."

The Ninth Circuit reversed and remanded with instructions to dismiss plaintiff's Eleventh Cause of Action. It specifically disagreed with this Court's conclusion that because plaintiff was contesting the INS authority, he was not required to exhaust his administrative remedies: "[E]ven when an alien is not, strictly speaking, seeking to attack a final order of exclusion, judicial review is precluded if the alien has failed to avail himself of all administrative remedies, one of which is the exclusion hearing itself." *Wang Zong Xiao*, 979 F.2d at 153.

The Ninth Circuit framed the issue before it as "whether the question of the INS' jurisdiction is appropriately decided in the first instance by the INS, or whether it is an issue beyond the authority of the INS to resolve and remedy." *Id.* at 154. The court agreed with defendants "that the INS should be accorded the opportunity to determine its own jurisdiction." *Id.* The court found that plaintiff's argument against INS jurisdiction (that the INS lacks authority over aliens who physically enter, but do not wish to be admitted to, the United States) was *statutorily*, and not constitutionally, based. *Id.* at 155. Finally, the Ninth Circuit rejected this Court's alternative basis for its decision (the Court's supervisory power to protect its witnesses):

> Given the statutory mandate requiring exhaustion, and the availability of habeas corpus relief from any final order of exclusion, the district court should have accorded the executive proceedings due respect, and consequently should have refrained from exercising jurisdiction. This is not a case where the administrative proceedings are not equipped to provide [plaintiff] with the remedies he seeks. In fact, it is within

the province of the Immigration Judge and the Board of Immigration Appeals to consider the need to protect [plaintiff], and either to grant him asylum or stay his deportation.

*Id.* at 156.

### B.

Defendants argue that three principles from the Ninth Circuit's opinion support their motion to dismiss the entire FAC. First, the Ninth Circuit determined that plaintiff has an adequate remedy at law: the administrative courts are equipped to provide plaintiff the remedy he seeks, which is the prevention of his return to the PRC. Second, that the habeas corpus proceedings, to which plaintiff is entitled if he loses in the administrative forum, are adequate to permit this Court to protect plaintiff from "abuses, oppression, and injustice." Defendants devote little time to these two arguments; accordingly, they are not explored in detail here.[2]

Defendants third argument (and the one to which they direct most of their attention) is based upon the following sentence from the Ninth Circuit's opinion: "Given the statutory mandate requiring exhaustion, and the availability of habeas corpus relief from any final order of exclusion, *the district court should have accorded the executive proceedings due respect, and consequently should have refrained from exercising jurisdiction.*" *Id.* (emphasis added). From this statement, defendants reason that not only must this Court allow the immigration proceedings to continue, "but also that the Court is deprived of *any* concurrent or 'collateral' jurisdiction over [plaintiff's] other claims." (Mem. of P. & A. at 6:4–6 (emphasis added).)

This sweeping assertion goes to the very heart of this Court's authority to consider

---

2. This Court also does not pause to consider defendants' "prudential" arguments against exercising jurisdiction. To the extent that the considerations characterized by defendants as "prudential" (e.g., efficient allocation of resources, ripeness, and "the political nature of immigration decisions") are not subsumed in the exhaustion inquiry (which this Court does address in some detail, *infra*), they have been considered, and rejected, by this Court previously. More to

the point, the Ninth Circuit's opinion, which is the *sole* basis for defendants' renewed motion to dismiss (as well as their ability to avoid plaintiff's "law of the case" objection to their motion), deals *only* with 8 U.S.C. § 1105a(c), the INA's exhaustion provision. Accordingly, this Court limits its discussion to the question whether § 1105a(c), as interpreted by the Ninth Circuit, mandates dismissal of plaintiff's entire FAC.

plaintiff's claims. In support of it, defendants cite *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), which involved a district court's jurisdiction to consider complaints filed by several individuals displeased with an administrative ruling by the Secretary of Health and Human Services ("Secretary"). There, the Secretary, unhappy with the decisions of a number of administrative law judges that a certain surgical procedure *was* compensable under the Medicare Act, issued a ruling that *no* payment was to be made for that procedure. The plaintiffs, who had undergone the surgical procedure and wanted to be reimbursed, filed suit in the district court without going through the administrative process to compel.

The Supreme Court held that plaintiffs' suit was barred because they had failed to exhaust their administrative remedies. In reaching this conclusion, the Court rejected plaintiffs' argument that because they were attacking the *procedure* by which the Secretary determined their entitlement to benefits (as opposed to her substantive determination that the medical procedure was not compensable), exhaustion of administrative remedies was not required, and the district court had jurisdiction under the general federal question statute, 28 U.S.C. § 1331. *See Heckler*, 466 U.S. at 614, 104 S.Ct. at 2021.

The Court noted that exhaustion was not an absolute requirement, but held that the exhaustion requirement would be excused *only* where a claim was "wholly collateral" to a claim for benefits under the Medicare Act. *Id.* at 618, 104 S.Ct. at 2023.

Defendants' claim that *Heckler* supports their argument, is, as follows: plaintiff's desired relief is a ruling that he is not to be returned to the PRC, and the relief plaintiff seeks is not "wholly collateral" to the relief he can obtain in the asylum proceeding; plaintiff can obtain that relief in the asylum proceedings, 8 U.S.C. § 1158; Congress has established an administrative process for the determination of asylum claims, a process that is analogous to the one at issue in *Heckler*; and exhaustion of administrative remedies is a condition precedent to judicial review under the INA, *id.* § 1105a(c), just as it

is under the Medicare Act. *See* 42 U.S.C. § 405(g)–(h). Consequently, defendants argue, plaintiff must take his claims, in the first instance, to the administrative process, and when his case has been resolved in that forum, he will have the benefit of judicial review (in the form of a habeas corpus proceeding) pursuant to 8 U.S.C. § 1105a(c).

Plaintiff argues that whereas in *Heckler*, the administrative forum was capable of giving the plaintiffs everything they wanted (namely, reimbursement for the cost of the surgical procedure), here, the most that the administrative proceedings can give to plaintiff is a grant of asylum, which, he argues, is inadequate.

Asylum is inadequate, according to plaintiff, because it can be revoked: "Asylum granted under subsection (a) ... may be terminated if the Attorney General ... determines that the alien is no longer a refugee within the meaning of [the INA] owing to a change in circumstances in the alien's country of nationality...." *Id.* § 1158(b). The Attorney General also may revoke a grant of asylum if the alien commits a serious crime or is found to have committed fraud on his asylum application. 8 C.F.R. § 208.24. Thus, plaintiff argues, the relief he seeks ("permanent" injunctive relief) is so different from the relief that he can obtain via asylum proceedings (a "temporary" grant of asylum), that the exhaustion rationale of *Heckler* should not apply.

Defendants claim that this Court cannot give plaintiff the relief he seeks, citing *INS v. Pangilinan*, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988), in which the Supreme Court reversed the Ninth Circuit's decision to confer naturalization upon Filipino nationals as an equitable remedy for asserted constitutional and statutory violations. With respect to the plaintiffs' *statutory* claims, the Court held that "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of" limitations set by Congress. *Id.* at 885, 108 S.Ct. at 2217. According to defendants, this holding eliminates the possibility that this Court will be able to give plaintiff the relief he seeks (permanent in-

junctive relief). Thus, defendants' argument continues, the relief available from the immigration court (grant of asylum) is at least as favorable (if not more so) than the relief this Court has the authority to grant plaintiff.

Defendants' argument on this point is squarely foreclosed by Ninth Circuit cases decided subsequent to *Pangilinan.* The Ninth Circuit has held that the passage from *Pangilinan* cited by defendants speaks only to the federal courts' authority to remedy *statutory* violations vis-a-vis an equitable grant of naturalization. In contrast, the Ninth Circuit has held that the courts' power to remedy *constitutional* violations is unaffected by *Pangilinan:* "The Court's holding precludes the judiciary from exercising its statutory powers of naturalization to redress *statutory* violations except in strict conformity with Congress' authorizing legislation. It does not speak to the courts' capacity to utilize traditional constitutional remedies to rectify *constitutional* violations." *Wauchope v. United States Dep't of State,* 985 F.2d 1407, 1418 (9th Cir.1993); *see also Ortega v. United States,* 861 F.2d 600, 603 (9th Cir. 1988) ("Absent a showing of ... a constitutional violation, [a] district court ha[s] no authority to ... grant [a] naturalization petition pursuant to its powers of equity.").

Plaintiff alleges constitutional violations in his third, eighth, and ninth causes of action. Plaintiff's requested remedy for each of those violations is the permanent injunctive relief that defendants insist this Court is powerless to provide under *Pangilinan.* The Ninth Circuit has spoken clearly to this issue. Under *Wauchope* and *Ortega,* this Court must reject defendants' argument and deny their motion to dismiss plaintiff's entire FAC.

### III.

For all of the foregoing reasons,

IT IS HEREBY ORDERED that:

1. Plaintiff's Eleventh Cause of Action is DISMISSED.

2. Defendants' motion to dismiss the remaining causes of action included in plaintiff's First Amended Complaint is DENIED.