05-4315-ag
Azize v. BCIS, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

Heard: August 26, 2009                    Decided: February 1, 2010
                    Docket No. 05-4315-ag

- - - - - - - - - - - - - - - - - - - - - -
WILLIAM AZIZE,
          Petitioner,


                    v.

BUREAU OF CITIZENSHIP AND IMMIGRATION
SERVICES, DEPARTMENT OF HOMELAND
SECURITY, and UNITED STATES ATTORNEY
GENERAL,
          Respondents.
- - - - - - - - - - - - - - - - - - -- - - - -

Before:  JACOBS, <u>Chief Judge</u>, NEWMAN, <u>Circuit Judge</u>, and
         TRAGER,[*] <u>District Judge</u>.

     Petition for review of an order of the Board of Immigration

Appeals denying an application for cancellation of removal on the

ground that the applicant was improperly denied an opportunity to

complete an application for naturalization.

     Remanded for further proceedings to the District Court, from

which a petition for a writ of habeas corpus had been transferred.

     Chief Judge Jacobs dissents with a separate opinion.

_____

          [*]Honorable David G. Trager, of the United States District Court
for the Eastern District of New York, sitting by designation.

Hagit M. Elul, Hughes Hubbard & Reed LLP, New York, N.Y., for Petitioner.

F. James Loprest, Jr., Special Asst. U.S. Atty., New York, N.Y. (Lev L. Dassin, Acting U.S. Atty., Sarah S. Normand, Asst. U.S. Atty., New York, N.Y., on the brief), for Respondents.

JON O. NEWMAN, Circuit Judge.

This petition to review an order for removal entered by the Board of Immigration Appeals ("BIA") presents a novel claim concerning an allegedly improper denial of naturalization. William Daneris Azize seeks review of an October 10, 2001, order of the BIA summarily affirming a September 8, 2000, decision of an Immigration Judge ("IJ"). The IJ's decision denied an application for cancellation of removal and ordered Azize removed to the Dominican Republic. The removal petition was referred to this Court by the District Court for the Southern District of New York (Sidney H. Stein, District Judge) after Azize filed a petition for a writ of habeas corpus in the District Court.

Azize contends that two applications for his naturalization were improperly denied in 1987 and 1989. He seeks relief from the removal order or, alternatively, nunc pro tunc determination of his applications for naturalization. The Government has commendably informed this Court that "it does not oppose [P]etitioner's request for a remand to the district court of the petition to the extent that

-2-

it relates to Azize's claim for equitable relief pertaining to his naturalization applications . . . should the Court deem such a remand appropriate." Letter from F. James Loprest, Jr., to Catherine O'Hagan Wolfe (October 7, 2009).  Having concluded that such a remand is appropriate under the unusual circumstances of this case, we remand to the District Court.

### Background

Facts concerning Azize.[1]  Azize, now 44 years old, was born in the Dominican Republic in 1965.  He came to the United States with his mother when he was five years old and has lived here since then.  He became a legal permanent resident in 1971 and received a Resident Alien Receipt Card, known as a "green card."  He enlisted in the military in 1984 and was honorably discharged in 1990.  He lives in Florida with his elderly mother, who is a United States citizen.  He has three children and three brothers, all of whom are United States citizens.

Naturalization proceedings.  In 1987, Azize filed an Application to File Petition for Naturalization, Form N-400, with the Immigration and Naturalization Service ("INS").  He stated, among other things, that he could write and speak English, that his last tax return was

---

[1]The facts, which we assume are true for purposes of this appeal, are taken from Azize's petition and other papers filed in the District Court.

filed in 1986,[2] and that he was willing to bear arms on behalf of the United States. He was administered and passed a citizenship examination and was issued a notice for a preliminary naturalization hearing, which was held on February 26, 1988. At that hearing, an INS officer requested that Azize turn in his green card, stating that he would not need it any more. Azize explained that his green card had been stolen and that he had applied for a replacement card. A not entirely legible photocopy of that application is in the joint appendix for this appeal.[3] Azize told the INS officer that she could locate his application for a replacement card in the INS files and put a stop on it, and that she should "swear me in," by which he presumably meant that the officer should attest that he had sworn to the truth of the application. The INS officer told Azize that he should wait for the replacement card to be mailed to him and come back when he received it.

Form N-400 contains two blank lines at the bottom of the form. The first follows the printed words "Non Filed," and the second follows the printed word "Reasons." On Azize's 1987 application form,

---

[2]He answered "No" to the question "Since becoming a permanent resident of the United States, have you failed to file an income tax return because you regarded yourself as a nonresident?".

[3]The Government asserts that the application for a replacement card was approved on July 16, 1987, but make no representation as to whether a replacement card was ever mailed to Azize.

the line following the printed words "Non Filed" contains some undecipherable letters, which the Government believes are the INS officer's initials, and the date "2/26/88." The line following the printed word "Reasons" is not filled in.

On April 7, 1989, Azize submitted a second application for naturalization. On this application he gave all of the same answers as on his 1987 application, with one difference, which might be pertinent to his pending appeal. To the question asking, "When was your last federal income tax return filed?" he answered "none." On the lines after the printed words "Non Filed and "Date, reasons" the following appears: "Does not have PP. - never filed taxes 87-87 elected not to file" followed by what appears to be the initials of the INS officer and the date of 7/17/89. The Government interprets "PP" to mean "passport" and contends that "elected not to file" refers to Azize's decision not to file the second Form N-400.

Criminal convictions. Several years after his unsuccessful second attempt to become a citizen, Azize became addicted to drugs and, in the words of his counsel, "entered a dark period of his life." On September 17, 1997, he was sentenced to six months' imprisonment upon his plea of guilty to attempted seventh degree criminal possession of a controlled substance in violation of New York Penal Law § 220.03 (McKinney 2008). While free on bail prior to sentencing, Azize was arrested for another narcotics offense, attempted third

-5-

degree sale of a controlled substance in violation of New York Penal Law § 220.39, for which he was sentenced to one year's imprisonment. Azize was also convicted in the District of Columbia of selling the substance known as "ecstacy" in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). See United States v. Azize, 88 Fed. Appx. 416 (D.C. Cir. 2004).

Removal proceedings. In 1998 the INS began removal proceedings based on Azize's September 17, 1997, conviction. He conceded removability and requested cancellation of removal pursuant to section 240A of the Immigration and Nationality Act, 8 U.S.C. § 1229b. In September 2000, an IJ denied cancellation on the ground that Azize's second conviction was for an aggravated felony, which disqualified him from cancellation. See 8 U.S.C. § 1229b(a)(3). The IJ ordered removal to the Dominican Republic. In October 2001, the BIA summarily affirmed.

After serving time for his federal drug offense, Azize was placed in detention by INS authorities. His counsel represents that he rehabilitated himself while in detention, completed a substance abuse program, and earned the praise of detention personnel for his help to detention staff and inmates. In November 2006, he was placed on supervised release and has been living and working in Florida since then.

Habeas corpus proceedings. In December 2004, Azize, proceeding

-6-

pro se, initiated a habeas corpus proceeding in the District Court for the Southern District of New York. He styled his papers "Nunc Pro Tunc Petition for Naturalization Status" and sought relief including (1) cancellation of his removal order on the ground that the INS had violated its regulations in connection with his naturalization application and (2) an order directing the Bureau of Citizenship and Immigration Services to grant his application for citizenship nunc pro tunc.

In August 2005, the District Court transferred the petition to this Court "to the extent it challenges the order to remove" Azize, stayed removal pending further order of this Court, and retained jurisdiction over Azize's application for release on bail. Transfer of the challenge to removal was required by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005). The District Court subsequently appointed counsel for Azize. The application for release apparently became moot when the United States Immigration and Enforcement voluntarily released Azize in November 2006. This Court appointed as pro bono counsel Hagit M. Elul, Esq., who has very ably represented Azize.

## Discussion

Azize primarily contends that his initial application for citizenship was improperly denied, that but for this allegedly improper denial he would have become a naturalized citizen, and that,

-7-

as a citizen, he would not have been subject to removal proceedings. He frames his legal position as asserting both (1) a denial of the constitutional right to have the Government follow its own procedures, see Morton v. Ruiz, 415 U.S. 199, 235 (1974), which he contends applies in the immigration context, see Montilla v. INS, 926 F.2d 162, 164 (2d Cir. 1991), and (2) an estoppel against the Government, see Thom v. Ashcroft, 369 F.3d 158, 165 n.13 (2d Cir. 2004).

Azize bases his claim of improper denial of his application for citizenship on what he alleges was the INS's termination of the processing of his first application upon his failure to surrender his green card, which he had informed the INS officer had been stolen and for which an application for a replacement card was pending. This action, Azize contends, violated the INS regulation concerning surrender of a green card, 8 CFR § 338.14 (1988). That regulation states:

> No certificate of naturalization shall be delivered by the clerk of the court in any case in which the representative of the Service in attendance at the final naturalization hearing notifies the clerk of court that the naturalized person has not surrendered his alien registration receipt card. Upon subsequent receipt of notice from the district director that he has waived the surrender of the card or that the card has been surrendered, the certificate shall be delivered by the clerk of court.

Id.

This regulation, Azize contends, makes it clear that failure to surrender a green card is not a basis to terminate a naturalization

-8-

proceeding, much less to deny the applicant the opportunity to take the oath of citizenship and thereby become a citizen, but is at most only a bar to receiving from a court clerk the formal certificate of naturalization. And even this bar, Azize further alleges, is not absolute, since the District Director may waive the surrender requirement. Thus, Azize contends, the INS officer should not have terminated the naturalization proceeding for failure to surrender the green card, but should have completed all the steps in the process, except for notifying the court clerk after naturalization had occurred that the card had been surrendered. These steps include: the applicant swears to or affirms the application, see 8 CFR § 332.11, the INS officer signs the application, see id., the applicant files a petition for naturalization (Form N-405) with a district court, see id. § 334.13, An INS employee recommends for or against granting the petition, see id. § 335.12, and notifies the applicant of the date and place of the final hearing, see id. § 335.13. Upon the court's granting of the petition, the applicant takes an oath of allegiance to the United States in open court. See id. § 337.1. See Boromeo Escaler v. United States Citizenship and Immigration Services, 582 F.3d 288, 289-90(2d Cir. 2009).

If it is established that the INS officer terminated Azize's first naturalization proceeding because he did not surrender his green card, termination on that basis would have been improper. It does not

follow, however, that Azize would have successfully completed the naturalization process and become a citizen. Apart from any factual circumstances that the Government might yet be able to develop that would have precluded naturalization in 1988, there is on the current record the notation on Azize's second application that as of April 7, 1989, when he signed that application, he had not filed any income tax returns. If he had not filed any required returns, he might not have been eligible for citizenship. See 8 CFR 316.10(b)(3)(iii) (applicant lacks required good moral character if the applicant has "[c]ommitted unlawful acts that adversely reflect upon the applicant's moral character.") However, the circumstances concerning his tax return record is placed in some doubt by his response on his first application that he had filed his last (1986) return, and by the notation of the INS officer on his second application of the curious entry "87-87" after the words "never filed taxes."

With such an important matter as citizenship potentially at stake, we think the facts should be ascertained. We will therefore remand to the District Court to make the factual determinations necessary for an adjudication of Azize's claims and, if those facts are found in favor of Azize, to proceed to the legal issues on which his claims for relief depend. Without attempting to circumscribe the District Court's inquiry, we think those factual issues include: the circumstances of Azize's tax return filings, whether his first

-10-

naturalization proceeding was terminated for failure to surrender his green card,[4] and if a premature termination occurred, whether Azize would have proceeded to the point in the process where he would have become eligible to take the oath of allegiance. The legal issues include the nature of the relief to which Azize might now be entitled, both with respect to his quest for naturalization and his effort to resist removal.[5] Since only this Court has jurisdiction to consider the merits of the challenge to the removal order, we will request the District Court to conduct appropriate fact-finding, resolve whatever legal issues appear to be within its jurisdiction, and, if it believes any relief from removal is warranted, recommend, in the capacity of a special master, such relief to this Court.

We appreciate that the Government has presented substantial

---

[4]The dissent contends that the citizenship proceeding was not terminated for lack of a green card, but only interrupted until a replacement card was produced. This is an issue that ought not to be resolved against Azize until appropriate fact-finding has occurred, and any relevant legal issues, based on the facts as found, have been adjudicated.

[5]The dissent misinterprets this opinion as contemplating a court ordered grant of citizenship nunc pro tunc. Not so. We simply believe that Azize's factual and legal claims deserve plenary consideration to determine what relief, if any, he may be entitled to. Moreover, we do not accept the dissent's premise that such an order is the only relief that could prevent removal. Just as the Government has decided not to oppose a remand, it might well elect not to press ahead with removal if exploration of the facts indicates that Azize should have been permitted to proceed with his application for citizenship up to the point of taking the oath.

procedural and substantive arguments against any relief for Azize. Nevertheless, we accept the Government's invitation to determine whether a remand is "appropriate," a characterization we believe we may make without adjudicating at this point any of the Government's legal arguments. The equities that Azize has asserted persuade us to exercise the broad authority set forth in 18 U.S.C. § 2106,[6] and, in light of the Government's decision not to oppose a remand, to determine that such a remand is "appropriate" under the circumstances of this case.

Accordingly, the case is remanded to the District Court for further proceedings not inconsistent with this opinion. From any final order of the District Court, either party may restore our jurisdiction by prompt notice to the Clerk of this Court, in which event the case will be returned to this panel. See United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994). The stay of removal will be continued unless and until terminated by order of this Court.

---

[6]The dissent marshalls factors that it contends weigh against any equitable relief. Omitted are the factors that weigh in Azize's favor, such as his United States citizen children, his United States citizen mother, his financial support for his mother, his commendable assistance to INS detention staff, and the length of time that the Government has permitted him to remain in the United States since the BIA ordered his removal. Whether or not all of the equities, taken together, weigh in favor of ultimate relief for Azize, we believe they at least weigh in favor of a remand.

Dennis Jacobs, <u>Chief Judge</u>, dissenting:

I respectfully dissent.

William Azize, an alien born in the Dominican Republic, accumulated three drug dealing convictions over a seven year period, 1997-2004. Unless Mr. Azize is exceedingly unlucky, his record evidences a busy and persistent career as a drug dealer. Under 8 U.S.C. § 1227(a)(2)(B)(I), the then--INS duly convened proceedings in 1998 to remove him from this country. In 2000, an Immigration Judge ruled that Azize was ineligible for relief from removal and directed that he be removed to the Dominican Republic. In 2001, the Board of Immigration Appeals affirmed. I see no impediment to his removal, and the majority opinion offers no convincing reason for derailing the process of removal.

The majority opinion designates the district court as a special master to find out whether, more than 20 years ago, an immigration officer suspended Azize's citizenship proceedings because he could not produce his green card (which Azize contended had been stolen). Even accepting Azize's account as true, he took no steps to appeal or reopen--or to come forward with a replacement green card. Then, sometime in the intervening twenty years after the application was marked non-filed, the proceedings were terminated. Rather than come

forward with the replacement green card and continue the application--or appeal, or take some other step--Azize simply filed another application for citizenship more than a year later. Again, Azize failed to appear with the necessary paperwork; again, he never remedied his omission; again, he did not become a citizen. In any event, there is no basis for the majority's repeated statement that the proceedings were allegedly "terminated" for failure to produce the green card. All that Azize alleges is that "[t]he INS informed him that he could not proceed with Mr. Azize's naturalization application until he received a replacement card." Failure to produce his green card did not cause termination, as the majority implicitly acknowledges when it characterizes Azize's allegation as "[t]he INS officer told Azize that he should wait for the replacement card to be mailed to him and come back when he received it." He was told to come back, not to go away (or to reapply).

In ordering the district court to find out whether the 1987 citizenship proceedings were terminated for failure to produce the green card, the majority concludes that such a termination would have been improper. Unless the government can show another reason why Azize would not have been entitled

to citizenship, the majority apparently plans to order citizenship for Azize, and to do so *nunc pro tunc* (as that is the only relief that could prevent his removal). The following are among the most serious defects in the majority's approach.

Even if it were found that an INS employee at Azize's preliminary February 26, 1988 hearing asked him to present his green card, this would not constitute a violation of INS regulations. The INS had no regulation precluding employees from asking for an alien's green card; the most Azize argues is that the regulations do not expressly require presentation. The INS's standard notice for the hearing, which Azize received, stated that aliens "must bring" their green card to the hearing. Asking for proof of a green card during the naturalization process serves the statutory requirement that an alien must prove five years of continuous, legal residency before filing a naturalization application. 8 U.S.C. § 1427(a); see also INS v. Pangilinan, 486 U.S. 875, 886 (1988) (holding that the burden of demonstrating every aspect of eligibility for citizenship is on the alien). So it was not inappropriate to ask Azize to produce his green card as proof of lawful residence and compliance with the immigration laws.

See, 8 U.S.C. 1304(e) (requiring legal aliens above 18 years of age to carry green card at all times).

Accordingly, even if (as Azize alleges) he was prevented from further pursuit of citizenship at that time, that would have been in accordance with the law. The majority apparently would have allowed the INS to ask for the green card (indisputably, the applicant must demonstrate his eligibility and identity), but would place no legal consequence on the failure to produce the green card that the hearing notice required him to bring--not even a temporary suspending of the proceeding while he gets it. Such a reading of the regulations, which would require the INS to make someone a citizen in such instances before ensuring that they had a green card, is improper.

The majority's apparent purpose for remanding is to see if there is a factual predicate for the majority to intervene to compel the grant of citizenship upon Azize. The majority opinion does not convince me that this Court has the power to confer citizenship on anyone. "[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers. . . . Rather, it has

-4-

been given [to] them as a specific function to be performed in strict compliance with the terms of an authorizing statute which says that '[a] person may be naturalized . . . in the manner and under the conditions prescribed in this subchapter, *and not otherwise.*' 8 U.S. C. § 1421 (d)." INS v. Pangilinan, 486 U.S. 875, 883-884 (1988) (emphasis in original). Absent statutory authorization, there is no reason to believe that the federal courts have the power to grant citizenship--which is what the majority says is "potentially at stake" here.

Finally, none of this would do Azize the slightest good unless citizenship is conferred upon him *nunc pro tunc*--that is, as of 1987, before the first of his serial convictions as a drug dealer. A great flaw in this approach is that the grant of relief *nunc pro tunc* is an equitable remedy. Edwards v. INS, 393 F.3d 299, 308 (2d Cir. 2004); Iavorski v. INS, 232 F.3d 124, 130 n.4 (2d Cir. 2000). For several reasons, this is no case for the exercise of equity:

- Azize could have taken steps more than 20 years ago to pursue the relief that he now seeks *nunc pro tunc*.

- Azize did in fact commence a second citizenship proceeding, which he abandoned rather than satisfy

-5-

the documentary burden placed upon him by law.

- Azize commenced an active career as a drug dealer more than a decade ago and persisted notwithstanding repeated convictions and incarcerations.

- The last offense for which he was convicted occurred while a removal order was pending, conduct that reflects a contempt for the laws of this country, and a fixed intent to continue his drug dealing career.

- To support the idea that Azize is no longer a dealer, the majority cites no better authority than Azize's appellate brief, which characterizes Azize's lengthy drug-dealing career "a dark period in his life." But the bare assertion of counsel does not constitute record support.

These equitable considerations all militate *against* granting citizenship *nunc pro tunc* for the purpose of eliding the salient fact that Azize has been a drug dealer. For these reasons, I would deny Azize's petition for review.