**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK CYRIL BROWN, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 11-71458 <br><br> Agency No. A035-104-809 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 7, 2014—San Francisco, California

Filed August 18, 2014

Before: Fortunato P. Benavides,[*] Richard C. Tallman,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton;
Concurrence by Judge Tallman

---

[*] The Honorable Fortunato P. Benavides, Senior Circuit Judge for the
U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

# SUMMARY[**]

### Immigration

The panel denied for lack of jurisdiction Mark Brown's challenge to the Board of Immigration Appeals' removal order, but transferred his claim that he is a United States citizen to the district court for evidentiary findings.

The panel held that it had jurisdiction to review Brown's non-frivolous citizenship claim, even though he waived his administrative appeals challenging his order of removal. The panel held that Brown may be able to establish citizenship if he can show that the Immigration and Naturalization Service's mishandling of naturalization applications by Brown and his mother resulted in a violation of his due process rights. The panel held that to establish a due process violation Brown must either show that the INS arbitrarily and intentionally obstructed his application or that the government was deliberately indifferent to whether his application was processed. The panel transferred the case to the district court for evidentiary findings on genuine disputed issues of material fact concerning Brown's nationality, and stated that if the district court finds that the INS acted unconstitutionally, it could order the agency to grant Brown citizenship as a remedy.

The panel also held that pledging an oath of allegiance in or after an interview with an INS officer as part of the

**[**]** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

naturalization process does not satisfy the "public ceremony" requirement of 8 U.S.C. § 1448(a).

Judge Tallman concurred in part, agreeing that Brown presented a genuine issue regarding his nationality and that transfer to the district court for a new hearing and decision on the claim is the appropriate remedy. Judge Tallman would not find, however, that Brown has a constitutionally protected right to apply for citizenship. Judge Tallman wrote that the Supreme Court has merely assumed, without deciding, that the Due Process Clause of the Fifth Amendment may be implicated when procedures limit an alien's ability to apply for citizenship.

## COUNSEL

Craig Varnen, Khaldoun Shobaki, and Michael Behrens (argued), Irell & Manella LLP, Los Angeles, California, for Petitioner.

Stuart F. Delery, Principal Deputy Assistant Attorney General, William C. Peachey, Ada E. Bosque, and Yamileth G. Davila (argued), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

CLIFTON, Circuit Judge:

Mark Brown, a native and citizen of India, petitions for review of the decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from an order of removal. In the administrative proceedings, Brown argued that he was or should be deemed a United States citizen, because the former Immigration and Naturalization Service ("INS") had wrongly prevented him from deriving citizenship through his parents and then from applying for citizenship on his own account. He also claimed that the government should be estopped from denying his citizenship and that he had, in fact, fulfilled the statutory requirements for citizenship set down in the Immigration and Nationality Act ("INA"). The Immigration Judge ("IJ") found that Brown had not sustained his burden of showing that he was a citizen and ruled that he had no power to grant Brown citizenship or estop the government from denying his citizenship. Brown now renews his claim to citizenship.

Because the record reflects disputed issues of fact relating to the government's alleged mishandling of naturalization applications by Brown and his mother, we transfer this matter to the District Court for the Central District of California for evidentiary findings. If the district court finds that the INS acted unconstitutionally, it may order the agency to grant Brown citizenship as a remedy.

## I.  Background

Brown was born in Madras, India, on July 4, 1968. He entered the United States lawfully as an immigrant on March

25, 1977, with his father, Trevor, mother, Marjorie, and older sister, Karen. Trevor and Marjorie submitted applications to petition for naturalization on April 13, 1983, by filing separate N-400 forms. Marjorie also listed Brown as a dependent on her N-400, so that he could apply to be naturalized under her application, and submitted on Brown's behalf a separate application for a certificate of citizenship on a form N-604. If both Brown's parents were naturalized by July 4, 1986, the date he turned eighteen, then Brown would become a citizen. 8 U.S.C. § 1432(a)(1) (1982).

Trevor was naturalized on November 15, 1985. For reasons that are disputed, however, Marjorie was not.[1] Brown and his parents claim that the INS told her in May 1985, at Trevor's interview, that it had lost her application. According to them, she was required to reapply on a second N-400 form and to pay the associated fees. The government disputes this, suggesting that the INS may have failed to process her application at the same time as her husband's because of a lack of resources and further that she never filed and paid the fees for a second application.

Marjorie was interviewed on February 7, 1986, the same day she allegedly filled out her second application. She ultimately took the oath of allegiance and was naturalized in August 1986, a month after Brown's eighteenth birthday, by which time he was no longer eligible to derive citizenship.

---

[1] The record includes material submitted by Brown during the immigration proceedings in support of his factual allegations including documents and affidavits from his mother and father. For current purposes, we accept the evidence as establishing disputed issues of fact, and the description that follows relies on that evidence, but we do not suggest that the evidence submitted by Brown is conclusive. The district court should receive evidence and make findings on disputed issues.

According to Brown, he continued his attempts to naturalize. Trevor asserts in his affidavit that Brown was told in 1990, when he went to the INS office in Los Angeles to apply for naturalization or a certificate of citizenship, that he did not need to pursue naturalization on his own because his parents were already U.S. citizens. Brown states that he called on the same INS office in 1991 and was told that he was already a citizen.

Nevertheless, in February 1996, Brown submitted a N-400 form to apply for naturalization. He asserts that he was told by an INS agent that his application had been approved and that he was administered the oath of allegiance by an INS agent. An INS computer inquiry about that application in July 1996 shows the words "CASE CLOSED" and "NATURALIZED" and, in handwriting, "Natz close out." Brown maintains that the printout shows that, according to INS records, he was a citizen; the government contended at oral argument that he is misinterpreting the printout.

In December 2001, Brown applied for a certificate of citizenship on a form N-600. The INS rejected this application because he was over eighteen. Nevertheless, an INS computer inquiry generated in December 2001 (stating "Form number: N400" on the top) shows the words "CASE CLOSED" and "NATURALIZED." Again, the government argues that Brown is misinterpreting these entries.

In January 2002, the INS sent to Brown's lawyer a decision letter relating to Brown's application for a certificate

of citizenship filed on a form N-604 in April 1983.**²** The letter said that his application had been denied because he turned eighteen before both his parents were naturalized.

At some undetermined time, the INS placed Brown in removal proceedings, apparently based on some criminal misconduct by Brown. In November 2002, Brown obtained a waiver of inadmissibility under former INA § 212(c), 8 U.S.C. § 1182(c) (1994). The crime that prompted the removal proceedings is not identified in the order granting the waiver, but the administrative record in this case shows that Brown pled guilty to misdemeanor possession of methamphetamine in violation of California Health and Safety Code § 11377(a) in April 1996.

Brown's criminal record lengthened after that. He pled guilty in August 1997 to being under the influence of a controlled substance in violation of Health and Safety Code § 11550(a). In August 2003, Brown was convicted of criminal threats in violation of California Penal Code § 422 and was ultimately sentenced to 16 months in prison. In October 2004, Brown was convicted of vandalism in violation of Penal Code § 594(b)(1) and was sentenced to 2 years and 8 months in prison. In September 2008, Brown was convicted of felony possession of methamphetamine in violation of Health and Safety Code § 11377(a) and was sentenced to another 2 years 8 months in prison.

---

**²** The government argues that this letter is not part of the administrative record and therefore it should not be considered. *See* 8 U.S.C. § 1252(b)(4)(A). However, the court of appeals may go beyond the administrative record when it transfers a matter to the district court because there is a genuine issue of fact. *Id.* § 1252(b)(5)(B); *see Batista v. Ashcroft*, 270 F.3d 8, 13–14 (1st Cir. 2001). We therefore grant Brown's motion for judicial notice of the N-604 denial.

In March 2010, the Department of Homeland Security ("DHS") issued Brown a Notice To Appear, stating that he was removable under 8 U.S.C. § 1227(a)(2)(B)(i) because he was an alien convicted of possession of a controlled substance. In April 2010, the DHS charged that Brown was also deportable because he had committed an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), by making the criminal threats, and because he had committed two crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii), by making criminal threats and committing vandalism.

Brown filed an application for asylum and withholding of removal in July 2010. In the hearing before the IJ, Brown argued that he was not removable because he was a citizen and that the government should be estopped from denying his citizenship. The IJ ruled that Brown had the burden of rebutting the presumption that he was an alien, because he was born outside the United States, and that he had not done so. The IJ also ruled that he did not have power to rule on the estoppel claim and that such a claim should be addressed to a federal district court.

The IJ sustained the government's charge that Brown was removable because of his drug-related conviction and his aggravated felony. The IJ found that Brown was not eligible for asylum because he had committed an aggravated felony. Brown then withdrew his application for asylum and "related relief" and accepted an order of removal to India. He waived appeal. The IJ entered an order of deportation in February 2011. Brown, proceeding pro se, and despite his statement to the IJ waiving appeal, filed a notice of appeal but did not file a brief to the BIA. In April 2011, the BIA dismissed the appeal because Brown had not argued that his waiver of

appeal was not knowing and intelligent. Brown filed a timely petition for review.

## II. Discussion

We deal first with our jurisdiction to review Brown's petition and then move to the merits of his citizenship claim.

### A. The order of removal

A petitioner may not challenge an order of removal unless he has exhausted his challenge before the BIA. 8 U.S.C. § 1252(d)(1). If the petitioner has not exhausted his challenge at the agency level, we are without jurisdiction to review it. *See Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004).

Brown argues to us that his waiver of appeal before the IJ was not knowing and intelligent. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1097–98 (9th Cir. 2004). On appeal to the BIA, however, Brown did not claim that the waiver was not knowing and voluntary, and therefore we may not review this claim. *Barron*, 358 F.3d at 677. We should conclude that his waiver was knowing and voluntary in any event. The IJ fully informed Brown of the consequences of accepting an order of removal, Brown's attorney warned him against waiving his right to appeal, and the IJ confirmed the waiver with both Brown and his attorney. Although Brown now claims that he only accepted the order of removal in order to expedite this court's hearing of his citizenship claim, *see Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 970 (9th Cir. 2003), that would not render his waiver unknowing or involuntary.

*B.  Brown's citizenship claim*

Brown's main claim is that he is or should be deemed to be a U.S. citizen.  As noted previously, Brown did not raise this issue before the BIA.  Lack of exhaustion, however, does not pose a jurisdictional bar to this claim.  "The statutory administrative exhaustion requirement of § 1252(d)(1) does not apply" to "a person with a non-frivolous claim to U.S. citizenship."  *Rivera v. Ashcroft*, 394 F.3d 1129, 1140 (9th Cir. 2004).  Even if a petitioner, as here, has waived his administrative appeals, we may still examine his nonfrivolous claim to citizenship.  Resolving a disputed claim of citizenship is necessary to any deportation proceeding, because the government is not permitted to deport citizens, and a claim of citizenship is thus a denial of an essential jurisdictional fact.  *Id.*

The statutory requirements for the naturalization of aliens are set out in the INA.  Under the INA, Brown could only be naturalized if both his parents were sworn in as citizens before his eighteenth birthday, or if he later applied for citizenship and was sworn in as a citizen.  8 U.S.C. §§ 1432, 1448.  A court may only grant citizenship to an alien who has not fulfilled the requirements of the INA if that alien can show that the denial of his claim for citizenship has violated his constitutional rights.  *See Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1416–19 (9th Cir. 1993) (citing *INS v. Pangilinan*, 486 U.S. 875, 883–85 (1988)).

Brown argues that the INS acted unconstitutionally in preventing him from becoming a citizen and that this court should grant citizenship as a remedy.  He also asserts that the government should be estopped from denying his citizenship.

In the alternative, Brown claims that he has, in fact, fulfilled the statutory requirements of the INA.

We discuss Brown's constitutional claim first. Because we conclude that there are genuine issues of material fact concerning Brown's nationality, we transfer this case to the United States District Court for the Central District of California.[3] 8 U.S.C. § 1252(b)(5)(B); *Hughes v. Ashcroft*, 255 F.3d 752, 755 n.1 (9th Cir. 2001). We reject Brown's claim for estoppel and his statutory claim.

### 1.  The constitutional claim

Brown asserts that the INS violated the right to procedural due process in rejecting his petitions for naturalization. A necessary predicate for a due process claim is a constitutionally protected interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Brown had such a protected interest in being able to apply for citizenship, both

---

[3] 8 U.S.C. § 1252(b)(5)(B) provides that the action shall be transferred to the district court for the district "in which the petitioner resides." Because Brown has been deported, "there is no district court that could hear this case under the literal interpretation of the statute." *Leal Santos v. Gonzales*, 495 F. Supp. 2d 180, 182 (D. Mass. 2007). We follow the Third Circuit in rejecting such an interpretation, which would foreclose all citizenship claims involving disputed issues of fact by deported petitioners. *See id.* at 182–83 (citing Order, *Leal Santos v. Att'y Gen.*, No. 06-2174 (3d Cir. Jan. 30, 2007)). Although the government opposes transfer, it has not argued that we are without the ability to transfer the case because Brown is no longer resident in the United States. We select the Central District of California because that is where Brown used to reside and where Brown's pro bono counsel for the current petition are located. The agency has the statutory authority to parole Brown back into the United States so he can attend the evidentiary hearing in the district. *See* 8 C.F.R. § 212.5(b)(4).

as an adult and derivatively through his mother as a minor.[4]
As the government conceded at oral argument, Brown had a
right to apply for citizenship, established by federal law. *See
id.* at 577; *see also, e.g.*, *Russell v. Landrieu*, 621 F.2d 1037,
1040 (9th Cir. 1980) (holding that a protected interest must be
"created and defined by an independent source, such as state
or federal law").

---

[4] The concurrence would have us leave to one side the question of
whether Brown has a "constitutionally protected interest in being able to
apply for citizenship." This is not a novel issue, however. In *Wauchope*,
we explained how, under Supreme Court authority, a federal court has the
ability to grant citizenship for constitutional violations, including
violations of the Due Process Clause. We wrote: "We find it significant
that the Court [in *Pangilinan*, 486 U.S. at 885–86] addressed the substance
of both the due process and equal protection claims, and nowhere
indicated that it considered the courts' limited statutory authority to be a
restriction on their ability to redress constitutional violations." 985 F.2d
at 1418; *see also Ortega v. United States*, 861 F.2d 600, 603 (9th Cir.
1988) (applying *Pangilinan* and holding that *"absent . . . a constitutional
violation*," a district court has no power to grant citizenship contrary to the
INA) (emphasis added). Because Brown was present in the United States
when the INS allegedly denied him his right to apply for citizenship, he
may sue for a violation of his rights under the Due Process Clause. *See
Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause
applies to all persons within the United States, including aliens . . . .")
(internal quotation marks omitted).

Furthermore, we may only transfer this case if, as the concurrence
states, there is "a genuine issue of material fact about [Brown's]
nationality." 8 U.S.C. § 1252(b)(5)(B). Brown is only entitled to
citizenship if he can show that his constitutional rights were violated, so
there can be no issue of material fact unless Brown had a constitutionally
protected interest in applying for citizenship. If Brown did not have such
a constitutionally protected interest, all the facts relating to his application
would be immaterial and transferring the case to the district court would
be pointless.

The next question is how the government might have violated this interest. Brown, relying on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), argues that constitutional rights were violated because the INS failed to follow its own regulations and internal operating instructions. *See id.* at 268 (holding that a petitioner could challenge his deportation through a writ of habeas corpus where the BIA had failed to abide by the regulations supplementing the INA). Brown asserts, among other things, that the INS violated 8 C.F.R. § 334.11 (1983), by failing to notify Marjorie "when and where to appear for preliminary investigation and filing []her petition for naturalization," and 8 C.F.R. § 341.6 (1983), by failing to "furnish[ him] the reasons for denial [of his certificate of citizenship]." He also claims that the INS violated Operating Instruction 103.2(q), which provides that cases must be "processed in chronological order by date of receipt."

We reject the claim as Brown has framed it, because the mere failure of an agency to follow its regulations is not a violation of due process. "[W]hile courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, . . . the basis for such reversals is not . . . the Due Process Clause, but rather a rule of administrative law." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979) (quoting *Bates v. Sponberg*, 547 F.2d 325, 330 (6th Cir. 1976)); *see also United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding that violations of IRS regulations did "not raise any constitutional questions"); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978) (holding that *Accardi* "enunicate[s] principles of federal administrative law rather than of constitutional law"). Furthermore, we have noted that "INS Operations

Instructions typically do not create substantive rights." *Abboud v. INS*, 140 F.3d 843, 848 (9th Cir. 1998), *superseded by statute as stated by Spencer Enters., Inc. v. United States*, 345 F.3d 683, 692 n.5 (9th Cir. 2003); *see also United States v. Tatoyan*, 474 F.3d 1174, 1178 (9th Cir. 2007) (holding that "[c]ompliance with . . . internal [customs] agency regulations is not mandated by the Constitution" (internal quotation marks omitted)). Therefore, insofar as Brown relies only on the supposed failure of the INS to follow its regulations and operating procedures, his claim fails.

Brown may, however, still be able to state a constitutional claim based on the underlying governmental conduct. In *Pangilinan*, the Supreme Court considered the possibility that the government might have acted unconstitutionally in hindering Filipino veterans from registering as U.S. citizens. 486 U.S. at 885–86. The Court did not rely on a potential violation of the underlying statute and regulations in conducting its analysis. Although the Court rejected the claim, the rejection was based on the Court's conclusion that there had not, in fact, been a violation of due process. As a result, we held in *Wauchope* that citizenship could be granted by a court as a remedy to rectify constitutional violations. *Wauchope*, 985 F.2d at 1417–18. Similarly, in *Bates*, from which our decision in *Calderon* quoted, the Sixth Circuit ruled that an agency's failure to follow its own regulations was not per se a violation of due process, but that constitutional rights were implicated "when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights." *Bates*, 547 F.2d at 329. Therefore, Brown may still be able to establish a claim to citizenship if he can show that the INS's mishandling of applications resulted in a violation of his constitutional right to due process. *Cf. Mustanich v. Mukasey*, 518 F.3d 1084,

1088 (9th Cir. 2008) (acknowledging that a claim for estoppel might lie if the petitioner could show that the INS acted unconstitutionally in mishandling his naturalization petition).

The Supreme Court has not set out what degree of government misconduct will suffice for a constitutional violation in this context, and our court and other circuit courts have not either. In *Dent v. Holder*, 627 F.3d 365, 375 (9th Cir. 2010), we transferred a citizenship claim to the district court to determine "a genuine issue of material fact" as to whether the petitioner had been adopted by a U.S. citizen when he was a minor. We did not suggest a standard for the district court to apply, merely noting that "[f]or all we know, the government lacks authority to sit on an application to naturalize a fourteen year old until after he is eighteen and has aged out, or to sit on applications for naturalization for 23 or 27 years." *Id.* at 376. In *Azize v. Bureau of Citizenship & Immigration Services*, 594 F.3d 86 (2d Cir. 2010), the petitioner claimed that he should be granted citizenship on the ground that the INS had improperly terminated his naturalization application because he had failed to surrender his green card. The Second Circuit transferred the case to a district court for factfinding, but did not suggest any standard that the court should apply to determine whether the petitioner was entitled to relief. *Id.* at 91–92.

We have some guidance from cases where the Court has ruled whether the government may be estopped from denying a petitioner's citizenship, however. In *Montana v. Kennedy*, 366 U.S. 308, 314–15 (1961), the Court held that the government could not be estopped from denying the citizenship of a petitioner whose mother was prevented from returning to the United States before his birth by the incorrect advice of an immigration officer. As the Court later put it,

estoppel would not lie against the government even though "the Government's error was clear." *INS v. Miranda*, 459 U.S. 14, 18 (1982). And, in *INS v. Hibi*, 414 U.S. 5 (1973), the Court again held that the government could not be estopped from denying a claim to citizenship even though it had knowingly failed to abide by the terms of an immigration statute permitting Filipino war veterans to naturalize. *See Pangilinan*, 486 U.S. at 879–80 (explaining why the government failed to abide by the statute). In this case, the error was again "clear." *Miranda*, 459 U.S. at 18. By contrast, if the INS's actions in a petitioner's case are motivated by animus or malicious intent, there is a constitutional violation. *See Pangilinan*, 486 U.S. at 886.

We conclude that if Brown can show that the INS arbitrarily and intentionally obstructed his application, his right to due process has been violated. The government has also violated Brown's right to due process if it has—unlike, for example, in *Montana* and *Hibi*—been deliberately indifferent to whether his application was processed. If Brown cannot show such a degree of culpability on the part of the INS, he has not proven a constitutional violation, and his citizenship claim must fail.[5]

We transfer this claim to the district court so that the court may make the necessary findings of fact to establish, in the first instance, whether Brown's constitutional rights were

---

[5] We have avoided using other "elusive terms" such as gross negligence or recklessness, although we believe that Brown must show a greater level of culpability than these terms ordinarily suggest in order to prove a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 334 (1986); *see, e.g.*, *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996) (comparing gross negligence, recklessness, and deliberate indifference in the 42 U.S.C. § 1983 context).

violated.  Brown's complaints fall into two groups.  First, Brown alleges that the government mishandled his mother's application so she did not naturalize by his eighteenth birthday.    Second, Brown accuses the government of preventing him from naturalizing on his own account after he turned eighteen by wrongly telling him that he was already a citizen.  The record as to both of these groups of complaints is controverted.  At oral argument, the government claimed that the evidence showed that Brown's mother's N-400 had never been lost and suggested that Brown was misreading the printouts from the INS's computer system that supposedly stated that he had been naturalized.  The district court should determine whether the INS acted with a sufficiently culpable mental state that it violated Brown's right to due process.

As to the first group of complaints, connected to the application of Brown's mother, we reject the government's argument that Brown is not able to assert a claim based on the treatment of his mother's application. There is no doubt that Brown was actually injured, because he would have automatically become a citizen if his mother had been naturalized before his eighteen birthday.  His mother's application included a request that a certificate of citizenship be issued for her son, so his connection to the application was known to the INS.  In *Wauchope*, we held that two applicants were able to claim citizenship on the grounds that the constitutional rights of their mothers had been violated by a statute that prevented them from transferring citizenship to their offspring. We noted, in that case, that the litigants had satisfied three criteria: (1) they had suffered an injury-in-fact giving them a concrete interest in the outcome of the issue in dispute; (2) they had a close relation to the third parties; and (3) the third parties were hindered in some way from protecting his own interests. *Wauchope*, 985 F.2d at 1411.

The first two prongs of that test are not in doubt in this case: Brown has suffered an injury as a result of the INS's delay in processing Marjorie's application, and he has a close relationship with his mother. The government disputes, however, that there is a hindrance to Marjorie's ability to protect her own interests. We conclude that there is. Any injury Marjorie personally suffered was cured when she received her citizenship, and so she no longer has standing to sue. *See Hosein v. Gonzales*, 452 F.3d 401, 404 (5th Cir. 2006) (per curiam) (ruling, on facts that are in relevant part identical to this case, that the appellant did not have standing to sue on behalf of her son, because "[a]fter all, she was granted citizenship"). Nor, contrary to the government's argument, did Marjorie have any strong incentive to resort to the courts and seek mandamus to force the INS to act as soon as it became apparent to her, in May 1985, that the INS had delayed processing her application. Mandamus is an "extraordinary remedy" that is only granted when no other relief is available, and Marjorie was justified in showing some patience before resorting to the courts. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994). She did not necessarily know at that time that by doing so, her own naturalization would not be completed until a month beyond her son's eighteenth birthday. Therefore, the district court may consider the argument that the INS acted unconstitutionally in mishandling Marjorie's application.

As to Brown's second group of complaints, the district court must consider, among other things, when Brown became ineligible to naturalize on his own because of his criminal record. It appears that Brown at some point lost the ability to apply successfully for citizenship because of his criminal activities, which are not fully documented in the

record before us.[6] But it also appears to be the case that, for at least some period in his adult life, Brown might have been able to apply successfully. Indeed, his sister was too old to obtain citizenship derivatively through her parents but was naturalized in 1987. The earlier Brown became ineligible for naturalization after he turned eighteen, the smaller the window of time during which a material constitutional violation may have been committed by the INS, because any conduct after Brown became unable to naturalize is irrelevant. *See Duran-Pichardo v. Att'y Gen.*, 695 F.3d 282, 287 (3d Cir. 2012) (holding that the petitioner "has no remedy because he has committed an aggravated felony").

Having determined the facts, the district court will then be able to draw a conclusion of law as to whether Brown's constitutional rights were violated. If the court finds that they were violated, it may order the agency to grant citizenship as a remedy as if the action had been brought in that court. *Wauchope*, 985 F.2d at 1418.

### 2. The estoppel claim

Brown also seeks to estop the government from denying his U.S. citizenship. "To estop an agency of the government a court must find affirmative misconduct by the government and must also find that the government's conduct will cause

---

**6** Individually, Brown's April 1996 conviction for possession of methamphetamine, and his August 1997 conviction for being under the influence of drugs, would have made him ineligible for naturalization for five years. *See* 8 U.S.C. §§ 1101(f)(3), 1182(a)(2), 1427(a). The IJ found that his 2003 conviction for making criminal threats in violation of California Penal Code § 422 was an aggravated felony, and this would have permanently barred him from applying for naturalization, notwithstanding any further convictions. *See* 8 C.F.R. § 316.10(b).

a serious injustice and that estoppel will not cause undue harm to the public interest." *Watkins v. U.S. Army*, 875 F.2d 699, 706 (9th Cir. 1989) (en banc). In this case, estopping the government from denying Brown's citizenship would have the same practical effect as granting him citizenship. *Mustanich*, 518 F.3d at 1088.

Brown's argument is all but foreclosed by the Supreme Court's decisions in *Hibi* and *Pangilinan*. In *Hibi*, which involved the same underlying facts as *Pangilinan*, the Court rejected the respondent's claim that the government had engaged in affirmative misconduct by failing to station in the Philippines an authorized naturalization representative for the entire period required by Congress. 414 U.S. at 8–9. And in *Pangilinan*, the Court held that "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers . . . does a court have the power to confer citizenship in violation of [the INA's] limitations." 486 U.S. at 885.

*Hibi* and *Pangilinan* may not present an absolute bar to estoppel. In *Mustanich*, this court held that a petitioner may still be able to "assert estoppel on the theory that the denial of his citizenship is unconstitutional." 518 F.3d at 1088. To do this, however, Brown will need to establish what he must under his primary claim for citizenship—that the government has violated his right to due process.

Therefore, Brown's claim for estoppel is entirely dependent on his constitutional challenge. Estoppel is, as Brown concedes, an equitable remedy. A "court[] of equity should not act . . . when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992). As we have held, Brown has a remedy if his

constitutional rights have been violated.    Therefore, we dismiss his claim for estoppel.

### 3.    The statutory claim

Brown also claims that there is a factual issue as to whether he has been naturalized under the terms of the INA. To become a citizen, a petitioner must take the oath of allegiance in a "public ceremony."    8 U.S.C. § 1448(a).[7] Brown claims that, in 1996, he was administered the oath of allegiance by an INS officer.  He argues that this may qualify him for citizenship, even though he concedes that this was not a public ceremony.

At least three courts have rejected the argument that an oath administered privately by an INS officer suffices for naturalization, in the absence of special circumstances set out by statute. *Abiodun v. Gonzales*, 461 F.3d 1210, 1215–16 (10th Cir. 2006) (signing an oath of allegiance during a naturalization interview does not satisfy the public ceremony requirement of 8 U.S.C. § 1448);  *Okafor v. Gonzales*, 456 F.3d 531, 534 (5th Cir. 2006) (same); *Tovar-Alvarez v. U.S. Att'y Gen.*, 427 F.3d 1350, 1353 (11th Cir. 2005) (per curiam) (same); *see* 8 U.S.C. § 1448(c) (permitting the Attorney General to grant an expedited oath ceremony).  This court has not yet ruled on the issue. *Iasu v. Smith*, 511 F.3d 881, 890–91 (9th Cir. 2007).  We adopt the reasoning of *Abiodun*, *Okafor*, and *Tovar-Alvarez* in holding that pledging an oath of allegiance in or after an interview with an INS officer as part of the naturalization process does not satisfy

---

[7] Before 1990, a petitioner for naturalization was required to take an oath for naturalization "in open court."  *See* Pub. L. No. 101–649, 104 Stat. 4978, 5044–45 (1990).

the "public ceremony" requirement of § 1448(a). This holding comports with our precedent. *See Perdomo-Padilla*, 333 F.3d at 966 (holding that a foreign national did not become a national of the United States when "he completed an application for naturalization that contained a statement of allegiance to the United States").

## III.  Conclusion

We deny Brown's challenge to his removal order on the grounds that we lack jurisdiction. We transfer the matter to the District Court for the Central District of California to make findings of fact and draw conclusions of law as to Brown's claim that he is entitled to U.S. citizenship. We dismiss Brown's claim that he is already a citizen by having already taken an oath of citizenship before an INS officer.

Each party shall bear its own costs.

**DENIED   IN   PART,   DISMISSED   IN   PART, TRANSFERRED IN PART.**

---

TALLMAN, Circuit Judge, concurring:

I concur only in parts I, II.A, II.B.2, and II.B.3 of today's opinion.

Brown "claims to be a national of the United States," and I agree that he has presented "a genuine issue of material fact about [his] nationality." 8 U.S.C. § 1252(b)(5)(B). I also agree that the appropriate remedy is to "transfer the proceeding to the district court . . . for a new hearing on the

nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28." *Id*.

But my colleagues do not stop there. They go on to declare, without much analysis and on an incomplete record, that Brown has a constitutionally protected interest in being able to apply for citizenship. Maybe such an interest exists always and for everyone; maybe it does not exist at all; or maybe it exists only when certain factual predicates are met. It is the latter possibility that dissuades me from reaching such a weighty issue before a district court takes evidence and decides the matter in the first instance.

My colleagues justify their expansive ruling by claiming that this is not a novel issue. But it is. The Supreme Court has merely assumed, without deciding, that the Due Process Clause of the Fifth Amendment may be implicated when procedures limit an alien's ability to apply for citizenship. *INS v. Pangilinan*, 486 U.S. 875, 885 (1988) ("Assuming that these respondents can properly invoke the protections of the United States Constitution, and granting that they are members of a special class that Congress intended to favor with statutory entitlements to naturalization, they were not deprived of those entitlements without due process."). In *Wauchope v. U.S. Dep't of State*, 985 F.2d 1407 (9th Cir. 1993), we held that a court may confer citizenship to remedy Equal Protection violations; we said nothing about whether an alien has a constitutionally protected interest in applying for citizenship. In fact, my colleagues cite to no case that has held that this constitutionally protected interest exists, so today's decision is novel indeed.

We may need to decide, once the record is complete, whether there is a constitutionally protected right to apply for citizenship, and whether the government can violate that right by not following its own citizenship application procedures. Declaring now the existence of a heretofore unrecognized constitutionally protected right to citizenship is premature. I think it inadvisable to advise the district court, at this stage, how to decide questions of law or which facts to consider. Knowing that we judge best when we judge on a robust record, we should have given the district court the first crack at these important issues.